# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**ARCHER & GREINER, P.C.**
Stephen M. Packman, Esq.
Douglas G. Leney, Esq.
Natasha M. Songonuga, Esq.
Alexander J. Andrews, Esq.
(*Pro Hac Vice* Admission Pending)
1025 Laurel Oak Road
Voorhees, NJ 08043
Telephone: (856) 795-2121
Facsimile: (856) 795-0574
Email: spackman@archerlaw.com
dleney@archerlaw.com
nsongonuga@archerlaw.com
aandrews@archerlaw.com

*Proposed Attorneys for Debtors*

| | |
|---|---|
| In re:<br><br>POOLIN TECHNOLOGY PTE. LTD., *et al.*,[1]<br><br>Debtors. | Case No. 26-18325<br><br>Chapter 11<br><br>(Joint Administration Requested) |

**ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (II) AUTHORIZING THE DEBTORS TO DESIGNATE THE STALKING HORSE BIDDER, (III) SCHEDULING AN AUCTION AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF OR REJECTION OF DESIGNATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (V) SCHEDULING A SALE HEARING AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (V) GRANTING RELATED RELIEF**

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Poolin Technology Pte. Ltd., a Singapore Private Limited Company; Lonestar Dream Inc. (5105); and Lonestar Taproot LLC (4118). The location of the Debtors' service address for purposes of these Chapter 11 Cases is: c/o Michael DuFrayne, CRO, 2564 US Highway 1, PMB #16884166, Lawrence, NJ 08648.

The relief set forth on the following pages, numbered two (2) through twenty-one (21), is **ORDERED.**

Upon the motion (the "Motion")[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order"), pursuant to sections 105(a), 363, 365, and 541 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6003, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 6004-1, 6004-2, 9013-1, and 9013-2(c) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules"): (a) authorizing and approving the bidding procedures, substantially in the form attached hereto as **Exhibit 1** (the "Bidding Procedures"); (b) establishing certain related dates and deadlines, (c) authorizing, but not directing, the Debtors' to enter into the Tarbush APA and the Pyote APA (collectively, the "Stalking Horse APA") and provide certain Bid Protections to the Stalking Horse Bidder; (d) approving the form and manner of notice of the Auction, if any, and the Sale Hearing, substantially in the form attached hereto as **Exhibit 2** (the "Sale Notice"); (e) approving the procedures governing the assumption and assignment of certain executory contracts and unexpired leases (the "Executory Contracts") in connection with any Sale (the "Assumption and Assignment Procedures"); (f) approving the form and manner of the Assumption and Assignment Notice, substantially in the form attached hereto as **Exhibit 3** (the "Assumption and Assignment Notice"); and (f) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C.

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

§§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court being able to issue a final order consistent with Article III of the United States Constitution; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice is necessary; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

A. The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion, including (i) approving the Bid Procedures; (ii) scheduling the

Auction and the Sale Hearing; (iii) approving the Sale Notice; and (iv) approving procedures for the assumption and assignment of Executory Contracts, including the Assumption and Assignment Notice. The entry of this Order is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

B. Under the circumstances, and particularly in light of the extensive marketing done by the Debtors and their advisors of the Assets prior to the date hereof, the Bidding Procedures, which are attached hereto as **Exhibit 1,** enable the Debtors to maximize the value of their Assets for the benefit of all stakeholders and constitute a reasonable, sufficient, adequate and proper means to provide potential competing bidders with an opportunity to submit bids, and are reasonably calculated to enable the Debtors to pursue higher or otherwise better offers for the Assets.

C. The Debtors have demonstrated compelling and sound business reasons for this Court to approve each of the Stalking Horse APAs and the Debtors' designation of Thor CALAP, LLC as the Stalking Horse Bidder for the Assets as set forth in the applicable Stalking Horse Bid. The Stalking Horse APA was negotiated in good faith and at arm's-length by the Debtors and the Stalking Horse Bidder.

D. The Stalking Horse APA represents the highest or otherwise best offer the Debtors have received to date to purchase the Assets designated for purchase thereunder. The Stalking Horse APA provides the Debtors with the opportunity to sell such Assets in a manner designed to

preserve and maximize their value and provides a floor for a further marketing and auction process. Without the Stalking Horse APA, the Debtors are at significant risk of realizing a lower price for such Assets. The Buyer (as defined in the Stalking Horse APA) shall act as a "stalking horse bidder" pursuant to the Stalking Horse APA and shall be subject to higher or otherwise better offers in accordance with the Stalking Horse APA and the Bid Procedures. The Stalking Horse Bid will enable the Debtors to minimize disruption to the Debtors' restructuring and/or sale process and secure a fair and adequate baseline bid for the Assets at the Auction(s) (if any). Pursuit of the Buyer as a "stalking horse bidder" and the Stalking Horse APA as a "stalking horse purchase agreement" is in the best interests of the Debtors and the Debtors' estates and their creditors, and it reflects a sound exercise of the Debtors' business judgment.

E. The Debtors' estates would suffer harm if the relief requested in the Motion to be approved by this Order is not granted.

F. The Stalking Horse Bidder and its counsel and advisors have acted in "good faith" within the meaning of Section 363(m) of the Bankruptcy Code in connection with the Stalking Horse Bidder's negotiation of the Bid Procedures and entry into the Stalking Horse APA.

G. The Expense Reimbursement to be paid to the Stalking Horse Bidder is: (1) an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code; (2) commensurate to the real and substantial benefits conferred upon the Debtors' estates by the Stalking Horse Bidder; (3) fair,

reasonable and appropriate in light of the size and nature of the proposed Sale, the commitments and accommodations of the Stalking Horse Bidder that would be made for the benefit of the Debtors' estates, the condition of the Assets, and the efforts that have been and will be expended by the Stalking Horse Bidder; and (4) necessary to induce the Stalking Horse Bidder to pursue a Sale and to be bound by the Stalking Horse APA. Accordingly, the Expense Reimbursement is reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

H. The Debtors have articulated good and sufficient reasons for, and the best interests of its estates and stakeholders will be served by, the Court scheduling or fixing dates pursuant to this Order for, among other things, the (i) Bid Deadline; (ii) Sale Objection Deadline; (iii) Auction; (iv) Assignment Objection Deadline; and (v) Sale Hearing.

I. The proposed Sale Notice (substantially in the form attached hereto as **Exhibit 2**) and the Assumption and Assignment Notice (substantially in the form attached hereto as **Exhibit 3**), as set forth in the Motion and this Order, are appropriate, sufficient, and reasonably calculated to provide all interested parties with timely and proper notice of the (i) Bidding Procedures, (ii) Auction, (iii) Assumption and Assignment Procedures (including with respect to Cure Amounts and the Assignment Objection Deadline), (iv) Sale Hearing, and (v) Sale, and no other or further notice shall be required for the Sale or the assumption and assignment of the Executory Contracts.

The applicable requirements of Bankruptcy Rule 2002 are satisfied by such notice or otherwise waived.

J. The Bid Procedures are fair, reasonable, and appropriate and represent the best available method for maximizing value for the benefit of the Debtors' estates.

K. The Motion and this Bidding Procedures Order comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

L. The Debtors' notice of the Motion and the Hearing was adequate and sufficient under the circumstances of these chapter 11 cases, and no other or further notice is required. A reasonable opportunity to object or be heard regarding the relief provided in this Order has been afforded to all parties in interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED** as set forth herein.

2. All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled prior to or at the Hearing are overruled.

3. The Bidding Procedures, which are attached hereto as **Exhibit 1** and incorporated herein by reference, are hereby approved in all respects and shall govern all Bidders and Bids, including those that may be submitted by Qualified Bidders at the Auction. The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures. Subject to the terms of the Bidding Procedures, the Debtors may modify the Bidding Procedures or waive

any provision or requirement therein as necessary or appropriate to maximize value for their estates.

4. Thor CALAP, LLC is hereby designated and approved as the Stalking Horse Bidder for the Assets pursuant to the terms of the Stalking Horse APA. The Debtors are authorized to enter into the Stalking Horse APA and comply with any and all obligations set forth in the applicable Stalking Horse APA that are intended to be performed prior to entry of the Sale Order(s).

5. The Stalking Horse Bidder is and shall be deemed a Qualified Bidder (without regard to any of the requirements or conditions set forth herein and without any further action by the Stalking Horse Bidder), and the Stalking Horse Bid (including as it may be increased at any Auction) is and shall be deemed a Qualified Bid for purposes of the Bid Procedures, without regard to any of the requirements or conditions set forth herein and without any further action by the Stalking Horse Bidder, and which Qualified Bid status cannot be abrogated by subsequent amendment or modification by the Debtors of the Bid Procedures.

6. The Debtors are authorized to grant the Expense Reimbursement to the Stalking Horse Bidder. The Expense Reimbursement will be payable to the Stalking Horse Bidder, in the event the Stalking Horse Bidder is not the Winning Bidder, from the proceeds of the cash portion of the purchase price of the applicable Winning Bid upon closing of the Sale.

7. The Debtor is hereby authorized to conduct the Sale without the necessity of complying with any state or local transfer laws or requirements.

8. The Sale Notice (substantially in the form attached hereto as **Exhibit 2**) is approved

## I. Important Dates and Deadlines

9. **Deadline to Submit Indications of Interest**. the deadline for submitting non-binding indications of interest to the counsel for the Debtors for the Assets **August 27, 2026.**

10. **Bid Deadline for Qualified Bids**. The deadline for all Potential Bidders to submit a Qualified Bid (other than the Stalking Horse Bidder's deemed Qualified Bid) is **September 8, 2026** (the "Bid Deadline"), as set forth in the Bidding Procedures.

11. **Auction**. As further governed by the Bidding Procedures, if more than one Qualified Bid is received by the Bid Deadline, the Debtor will hold the Auction beginning on **September 10, 2026 at 10:00 a.m. (EST)** either (a) at the offices of Archer & Greiner, P.C., 1025 Laurel Oak Road, Voorhees, NJ 08043, (b) virtually, or (c) or at such other date, time, and location as designated by the Debtors.

12. The Debtors may determine to cancel the Auction for reasons consistent with their fiduciary obligations; *provided* that the Debtors shall provide all Qualified Bidders with advance notice of cancellation of the Auction by the later of (a) one (1) business day prior to the Auction or (b) the Baseline Bid Deadline (as defined below).

13. If the Debtors receive only one (1) Bid that is a Qualified Bid (which may be a Stalking Horse Bid, as applicable), the Debtors, in their business judgment upon, shall (i) notify all potential bidders and the Court in writing that (a) the Auction is cancelled and (b) such Qualified

Bid is the Winning Bid, and (ii) seek authority at the Sale Hearing to consummate the Sale transactions with such Qualified Bidder contemplated by its Qualified Bidder APA (or the Stalking Horse APA, as applicable).

14. Except as otherwise determined by the Debtors, only the Debtors, the U.S. Trustee, the Committee, if any, and Qualified Bidders, and, in each case, the respective representatives and professionals of the foregoing parties, shall be entitled to participate in the Auction. To the extent the Auction goes forward, the Debtors shall send written notice of the date, time, and place of the Auction to all Qualified Bidders and the U.S. Trustee no later than one business day before the Auction.

15. On or prior to 5:00 p.m. (prevailing Eastern Time) on the day that is one calendar days before the Auction (the "Baseline Bid Deadline"), the Debtors and their advisors will evaluate Qualified Bids and identify the Qualified Bid(s) that is, in the Debtors' reasonable business judgment, the highest or otherwise best bid (each a "Baseline Bid" and the Bidder making such Baseline Bid, the "Baseline Bidder"), and shall notify the Stalking Horse Bidder and all Qualifying Bidders of the Baseline Bid(s) no later than the Baseline Bid Deadline. In no event shall any Qualified Bidder, other than a Stalking Horse Bidder be entitled to any Bid Protections.

16. Following an Auction, the Debtors may: (a) select, in their business judgment, pursuant to the Bidding Procedures, the highest or otherwise best Qualified Bid as the Winning Bid; and (b) reject any Bid (other than the Stalking Horse Bid) (regardless of whether such Bid is

a Qualified Bid) that, in their business judgment, is (i) inadequate, insufficient, or not the highest or otherwise best Bid, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or the Bidding Procedures, or (iii) contrary to, or otherwise not in the best interests of the Debtors' estates, affected stakeholders, or other parties in interest, in each case subject to and in accordance with the Bidding Procedures.

17. **Notice of Winning Bidder and Sale Order**. **On or before September 9, 2026**, the Debtors will file with the Court and serve on the Notice Parties[2] and on all Contract Counterparties to Assigned Contracts included in the Winning Bid(s), the Notice of Winning Bidder(s). Such Notice shall include, as exhibits, (a) a copy of the purchase agreement(s); (b) a copy of the proposed Sale Order; and (c) identification of the Assigned Contracts for such Sale (which may be in the form of an exhibit or schedule to the applicable asset purchase agreement).[3]

18. **Sale Objections Deadline**. To be considered, any objection to the Sale(s) must: (a) comply with the Bankruptcy Rules and the Local Rules; (b) be made in writing and filed with

[2] "Notice Parties" means (i) all entities reasonably known to have expressed an interest in a transaction with respect to all or part of the Assets, (ii) all entities known to have asserted any lien in or upon any of the Assets, (iii) the Office of the United States Trustee for the District of New Jersey, (iv) the United States Attorney's Office for the District of New Jersey, (v) the Internal Revenue Service, (vi) counsel for Stalking Horse Bidder, (vii) counsel for the Committee and (viii) all parties who have requested notice pursuant to Federal Rules of Bankruptcy Procedure Rule 2002.

[3] The Debtors may, in their discretion, serve a Notice of Winning Bidder(s) by U.S. Mail, email or other acceptable means, without attached copies of a purchase agreement and/or proposed Sale Order; ***provided, however***, that any such Notice of Winning Bidder(s) must identify where parties receiving such notice may access such documents free of charge.

the Court; (c) be filed on or before **September 14, 2026 at 5:00 p.m. (EST)** (the "Sale Objection Deadline"); and (d) served on (i) the proposed counsel to the Debtors, (ii) the Office of the United States Trustee for the District of New Jersey, (iii) counsel for the Stalking Horse Bidder, (iv) if applicable, counsel for the relevant Winning Bidder(s) and/or counsel for the relevant Back-Up Bidder(s); and (v) counsel for the Committee (collectively, the "Objection Notice Parties"). The failure of any objecting person or entity to timely file an objection prior to the Sale Objection Deadline shall be a bar to the assertion at the Sale Hearing or thereafter of any objection to the relief requested by the Debtors, or the consummation and performance of the Sale(s) of the Assets to the Winning Bidder(s), including the transfer of the Assets free and clear of all Encumbrances (with the same to attach to the cash proceeds of the Sale(s) to the same extent and with the same order of priority, validity, force, and effect which they previously had against the Assets, subject to the rights and defenses of the Debtors and the Debtors' estates with respect thereto), and the Debtors' assumption and assignment or transfer of the Assigned Contracts to the Winning Bidder(s) and such person shall be deemed to "consent" to such sale for purposes of section 363(f) of the Bankruptcy Code.

19. **Sale Hearing**. The hearing before the Court to consider approval of the Sale to the Winning Bidder shall be held on S**eptember 16, 2026 at __:00 __.m. (EST)**. The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing or by filing a notice on the docket for the Chapter 11 Cases.

20. Any deposit provided by a Qualified Bidder shall be held in escrow by the Debtors or their Escrow Agent and shall not become property of the Debtors' bankruptcy estates except as set forth in Section 4(i) of the Bidding Procedures.

21. Within two (2) business days after entry of this Order, the Debtors will cause a copy of this Order, the Bidding Procedures, and the Sale Notice to be served upon the Notice Parties.

22. Pursuant to Local Rule 6004-2(c)(2): (a) each bidder participating at an Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale, as set forth in the Bidding Procedures; (b) the Auction shall be conducted openly; and (c) the Auction shall be documented, recorded, or videotaped.

## II. Assumption and Assignment Procedures.

23. The procedures set forth in the Motion and below regarding the assumption and assignment of the Executory Contracts proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Winning Bidder pursuant to section 365(f) of the Bankruptcy Code in connection with the Sale are hereby approved.

a. **Assumption and Assignment Notice**. As soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors will file with the Court and serve on each Contract Counterparty to an Executory Contract listed therein, a notice substantially in the form annexed to the Bid Procedures Order as **Exhibit 3** (the "Assumption and Assignment Notice"), which shall include a schedule identifying each of the Debtors' Executory Contracts that may be assumed and assigned in connection with the Sale (the "Assigned Contracts Schedule"). The Assumption and Assignment Notice will state (i) the cure amount, if any, that the Debtors believe is necessary to cure all monetary defaults, if any, under each Executory

Contract (the "Cure Amount"), (ii) identify any proposed adequate assurance of future performance ("Adequate Assurance"), if any, and (iii) inform such Contract Counterparty of the requirement to file any Assignment Objection (defined below) by the Assignment Objection Deadline (as defined below). Service of the Assumption and Assignment Notice upon a Contract Counterparty does not: (i) constitute an admission that a particular Executory Contract constitutes an executory contract or unexpired lease of property pursuant to section 365 of the Bankruptcy Code, or that such stated Cure Amount constitutes a claim against the Debtors or a right against the Winning Bidder, all rights with respect thereto being expressly reserved; or (ii) confirms that the Debtors are required to assume and/or assign such Executory Contract.

b. **Assigned Contracts.** The inclusion of an Executory Contract on the Assigned Contracts Schedule or Supplemental Assigned Contracts Schedule, will not obligate the Debtors to assume any Executory Contract listed thereon, obligate the Winning Bidder to take assignment of such Executory Contract, or constitute any admission or agreement of the Debtors that such Executory Contract is an executory contract or unexpired lease. Only those Executory Contracts that are included on an Assigned Contracts Schedule or Supplemental Assigned Contracts Schedule attached to the Sale Order approving the Sale to the Winning Bidder will be assumed and assigned to the Winning Bidder (collectively, the "Assigned Contracts"), *provided*, *however*, no Contract shall be deemed assumed and assigned pursuant to section 365 of the Bankruptcy Code until the date the Sale has closed or, if later, the date the Court has entered an order assuming and assigning such Executory Contract. To the extent an Executory Contract is not assumed and assigned to the Winning Bidder, the Debtors will, in their reasonable discretion, either reject such unassigned Executory Contract, or sell or transfer such unassigned Executory Contract to the extent permitted by applicable law.

c. **Cure Amounts**. The payment of the applicable Cure Amounts due under an Assigned Contract by the Debtors and/or the Winning Bidder shall (i) effect a cure of all defaults existing thereunder, (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default, and (iii) together with the assumption of the Assigned Contract by the Debtors and

the ultimate assignment of such Assigned Contract to the Winning Bidder, constitute adequate assurance of future performance thereof.

d. **Supplemental Contract Assumption Notice**. To the extent the Debtors, at any time after the Assumption Deadline (i) identify additional Executory Contracts that may be assumed by and assigned to the Winning Bidder, (ii) remove any Executory Contracts from the list attached to the Assumption and Assignment Notice, (iii) and/or modify the previously stated Cure Amount associated with any Executory Contract, the Debtors will promptly file with this Court and serve by first-class mail a supplemental notice of contract assumption and assignment (a "Supplemental Assumption and Assignment Notice") on each of the applicable Contract Counterparties affected by the Supplemental Assumption and Assignment Notice. Each Supplemental Assumption and Assignment Notice shall include the same information with respect to listed Executory Contracts as would have been included in the Assumption and Assignment Notice (each a "Supplemental Assigned Contracts Schedule").

e. **Assumption/Assignment Objection.**

i. Objections to an Assumption and Assignment Notice, if any, must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Rules, and any order governing the administration of these Chapter 11 Cases; (iii) state with specificity the nature of the objection and, if the objection pertains to (x) the proposed Cure Amount, state the cure amount alleged to be owed to the objecting Contract Counterparty, or (y) the proposed Adequate Assurance, state the adequate assurance amount purportedly required, together with any applicable and appropriate documentation in support thereof, (clauses (i)-(iii), the "Assumption/Assignment Objection Requirements"); and (iv) be filed with the Court no later than the Assumption Objection Deadline. The Assumption Objection Deadline shall be at **5:00 p.m. (Eastern) on September 14, 2026**.

ii. Objections, if any, to a Supplemental Assumption/Assignment Notice, must: comply with the Assumption/Assignment Objection Requirements and be filed with the Court on the later of (x) the

Assumption Objection Deadline and (y) Sale Hearing, which date will be set forth in the Supplemental Assumption/Assignment Notice (each, a "Supplemental Assumption/Assignment Objection").

f. **Resolution of Assumption/Assignment Objections.**

i. If a Contract Counterparty files an Assumption and Assignment Objection or a Supplemental Assignment Objection and the Winning Bidder has designated that it wishes to take assignment of such Executory Contract, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, then such objection will be resolved at the Sale Hearing, but such Executory Contract shall be assumed and assigned only upon satisfactory resolution of the Assumption and Assignment Objection or Supplemental Assignment Objection, as applicable, to be determined in the Winning Bidder's discretion, ***provided, however,*** that if an Assumption and Assignment Objection or Supplemental Assignment Objection is resolved by the Court in a manner that is not satisfactory to the Winning Bidder, the Winning Bidder shall retain the right to remove the applicable Executory Contract subject to such objection from the Assigned Contract Schedule, and such Contract shall not constitute an Assigned Contract and the Winning Bidder shall not be responsible for any Cure Amount or Adequate Protection with respect to such Executory Contract.

ii. **No Assumption and Assignment Objection.** Unless a Contract Counterparty to an Executory Contract listed on an Assigned Contracts Schedule or a Supplemental Assigned Contracts Schedule has timely and properly filed and served an objection to an Assumption and Assignment Notice or a Supplemental Assumption and Assignment Notice based on one or more Assumption and Assignment Objection Requirements, including, to the Cure Amount, such Contract Counterparty shall (i) be forever barred from objecting to the assumption and assignment of such Executory Contract, including with respect to Cure Amount, and from asserting any additional cure or other amounts with respect to such Contract, and the Debtors and the Winning Bidder shall be entitled to rely

solely upon the Cure Amounts set forth in such notice, as applicable; (ii) be deemed to have consented to the assumption and assignment to the Winning Bidder of such Executory Contract; and (iii) be forever barred, estopped, and permanently enjoined from asserting or claiming against the Debtors, the Winning Bidder or their respective property that any additional prepetition amounts are due or other prepetition defaults exist, that conditions to assignment must be satisfied under such Executory Contract or that there is any objection or defense to the assumption and assignment of such Contract. In addition, the Cure Amount set forth in the Assumption and Assignment Notice or a Supplemental Assumption and Assignment Notice, as applicable, shall constitute a final determination of the total Cure Amount required to be paid by the Debtors in connection with the assumption and assignment of such Contract.

## III. **Miscellaneous**.

24. Subject to final approval at the Sale Hearing, the Debtors are authorized, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to enter into and perform the Stalking Horse APA, subject to the solicitation of higher or otherwise better bids at the Auction.

25. The Stalking Horse APA, as applicable, shall be binding and enforceable on the parties thereto in accordance with its terms. The failure to describe specifically or include any provision of the Stalking Horse APA or related documents in the Motion or herein shall not diminish or impair the effectiveness of such provision. The Stalking Horse APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, solely in accordance with the terms thereof, without further order of the Court; ***provided, however***, the parties may not amend the Purchase Price, Bid Protections, or make any

other changes to the Stalking Horse APA which are materially adverse to the Debtors without further order of this Court.

26. For the avoidance of doubt and notwithstanding anything to the contrary contained in this Order, this Order does not approve the Sale of the Assets under the Stalking Horse APA or authorize the consummation of the Sale, such approval and authorization (if any) to be considered only at the Sale Hearing and all rights of all parties in interest to object to such approval and authorization are reserved.

27. No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, break-up fee, topping or termination fee, or other similar fee or payment, and, by submitting a Bid, such person or entity is deemed to have waived its right to request or file with this Court any request for expense reimbursement or any other fee of any nature in connection with the Auction and the Sale, whether by virtue of Bankruptcy Code § 503(b) or otherwise.

28. The failure to include or reference a particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness or enforceability of such a provision in the Bidding Procedures.

29. The Court, at the request of the Debtors and subject to the Court's availability, may modify the dates of and adjourn any hearing set by this Order without further order of this Court, provided that the Debtors will serve notice to all requisite parties informing them of such modification.

30. In the event of any inconsistencies between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

31. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

32. The Debtors have demonstrated that without the approval of the Bidding Procedures and the timelines contemplated therein, the Debtors' assets will diminish and deteriorate to the detriment of all stakeholders, including the Debtors' creditors. Further, such harm cannot not be redressed by a legal or equity remedy. Accordingly, the Debtors have demonstrated that the requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003(a).

33. Notwithstanding Bankruptcy Rule 6004(h) and 6006(d), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

34. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

35. The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

---

36. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**EXHIBIT 1**

**Bidding Procedures**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**ARCHER & GREINER, P.C.**
Stephen M. Packman, Esq.
Douglas G. Leney, Esq.
Natasha M. Songonuga, Esq.
Alexander J. Andrews, Esq.
(*Pro Hac Vice* Admission Pending)
1025 Laurel Oak Road
Voorhees, NJ 08043
Telephone: (856) 795-2121
Facsimile: (856) 795-0574
Email: spackman@archerlaw.com
dleney@archerlaw.com
nsongonuga@archerlaw.com
aandrews@archerlaw.com

*Proposed Attorneys for Debtors*

| | |
|---|---|
| In re:<br><br>POOLIN TECHNOLOGY PTE. LTD., *et al.*,[1]<br><br>Debtors. | Case No. 26-18325<br><br>Chapter 11<br><br>(Joint Administration Requested) |

**BIDDING PROCEDURES FOR THE SUBMISSION, RECEIPT, AND ANALYSIS OF BIDS IN CONNECTION WITH THE SALE OF THE DEBTORS' ASSETS**

On July 22, 2026, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"). The Debtors are authorized to continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.[2]

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Poolin Technology Pte. Ltd., a Singapore Private Limited Company; Lonestar Dream Inc. (5105); and Lonestar Taproot LLC (4118). The location of the Debtors' service address for purposes of these Chapter 11 Cases is: c/o Michael DuFrayne, CRO, 2564 US Highway 1, PMB #16884166, Lawrence, NJ 08648.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Debtors' Motion For Entry Of (I) An Order (A) Approving Certain Bidding Procedures And The Form And Manner*

On [July ●], 2026, the Court entered an order (the "Bid Procedures Order") authorizing the Debtors to, among other things, solicit offers for one or more Sales (as defined herein) through the process and procedures set forth below (the "Bid Procedures").

The Debtors seek to consummate one or more transactions (each, a "Sale") for the sale of substantially all of the Debtors' assets (the "Assets") under section 363 and, as applicable, section 365, of the Bankruptcy Code to the extent certain criteria are satisfied as set forth in greater detail below. Any Sale will be subject to the approval of the Court. **A hearing by the Court on the approval of any Sale(s) is currently scheduled for September ____, 2026 at ___:00 _.m. (EST) (the "Sale Hearing").**

**Summary of Key Dates Established by Bid Procedures Order**

| **Event** | **Deadline** |
|---|---|
| Deadline for Submission of Non-Binding Indication of Interest | no later than August 27, 2026 |
| Deadline for the Debtors to File and Serve Assumption and Assignment Notice | August 21, 2026 |
| Deadline to Submit Qualified Bids | September 8, 2026 |
| Auction (if necessary) | September 10, 2026 |
| Deadline to File Notice of Winning Bid(s) and Back-Up Bid(s) (including the Proposed Sale Order) | September 11, 2026 |
| Deadline to Object to Sale(s) | September 14, 2026 at 5:00 p.m. (EST) |
| Assumption and Assignment Objection Deadline | September 14, 2026 at 5:00 p.m. (EST) |
| Sale Hearing (no later than) | September 16, 2026 |
| Deadline to Close Sale(s) | November 30, 2026 |

*Of Notice Thereof, (B) Authorizing The Debtors To Designate The Stalking Horse Bidder, (C) Scheduling An Auction And A Hearing On The Approval Of The Sale Of Substantially All Of The Debtors' Assets, (D) Authorizing The Debtors To Enter Into The Purchase Agreements, (E) Establishing Certain Assumption And Assignment Procedures And Approving The Manner Of Notice Thereof, And (F) Granting Related Relief; And (II) An Order (A) Authorizing The Sale Of Substantially All Of The Debtors' Assets Free And Clear Or Encumbrances, (B) Approving The Assumption And Assignment Of The Potentially Assigned Contracts, And (C) Granting Related Relief*2 [ECF No. [●]] (the "Sale Motion"), seeking approval of, among other things, these Bidding Procedures.

**Copies of the Order or any other documents in the Debtors' Chapter 11 Cases are available upon request to Verita Global by calling (866) 507-8031 (U.S./Canada) or (781) 575-2122 (international) or by visiting the Debtors' restructuring website at: https://www.veritaglobal.net/Poolin ("Verita Global Website").**

## I. BID PROCEDURES

### A. General Sale Transaction Information

#### 1. *Assets for Sale*.

The Debtors intend to sell all, substantially all, or a portion of their Assets. The ability to undertake and consummate a sale of the Assets shall be subject to competitive bidding, as set forth herein, and approval by the Court. Pursuant to these Bidding Procedures, the Debtors will determine the highest or otherwise best offer for the sale of the Purchased Assets and, if applicable, other of the Debtors' assets. The Debtors reserve the right to sell their Assets to multiple Qualified Bidders in separate lots and the right to link Qualified Bids together.

These Assets are being sold free and clear of all liens, claims, interests, or other encumbrances to the greatest extent permitted by the Bankruptcy Code and applicable non-bankruptcy law.

#### 2. *Public Announcement of Auction and Sale Hearing*.

Within one (1) business days after entry of the Bid Procedures Order, the Debtors shall serve on the Notice Parties[3] and cause to be published on the Verita Global Website: (i) a notice (the "Sale Notice" setting forth (a) a description of the Assets available for sale in accordance with the Bidding Procedures, (b) the date, time, and location of the Auction and Sale Hearing (as defined below), and (c) the Sale Objection Deadline and Supplemental Sale Objection Deadline (each as defined in Section X below) and the procedures for filing such objections; (ii) the Order, and (iii) this Bidding Procedures.

#### *3. Access to Due Diligence Materials*

To participate in the bidding process and receive due diligence information, including full access to the Debtors' electronic data room (the "Data Room") and additional non-public information regarding the Debtors (the "Diligence Materials"), parties interested in receiving due diligence information to participate in the bidding process (each, an "Interested Party") must

[3] "Notice Parties" means (i) all entities reasonably known to have expressed an interest in a transaction with respect to all or part of the Assets, (ii) all entities known to have asserted any lien in or upon any of the Assets, (iii) the Office of the United States Trustee for the District of New Jersey, (iv) the United States Attorney's Office for the District of New Jersey, (v) the Internal Revenue Service, (vi) counsel for Stalking Horse Bidder, (vii) counsel for the Committee and (viii) all parties who have requested notice pursuant to Federal Rules of Bankruptcy Procedure Rule 2002.

deliver or have previously delivered to the Debtors the Preliminary Bid Documents (as defined herein) to the following parties (the "Recipient Parties"):

i. proposed counsel to the Debtors: Archer & Greiner P.C., 1025 Laurel Oak Road, Voorhees, NJ 08043, Attn: Stephen M. Packman (spackman@archerlaw.com), Natasha M. Songonuga (nsongonuga@archerlaw.com), and Alexander J. Andrews (aandrews@archerlaw.com);

ii. investment banker to the Debtors: DuFrayne LLC, Attn: Michael DuFrayne (mdufrayne@dufraynellc.com).

The "Preliminary Bid Documents" that must be submitted to the Recipient Parties **on or before August 27, 2026 at 5:00 p.m. (EST)** include: (a) an executed confidentiality agreement (a "Confidentiality Agreement") in form and substance reasonably acceptable to the Debtors; (b) sufficient information to show that the Interested Party has sufficient cash on hand or has received sufficient non-contingent debt and/or equity funding commitments to consummate a purchase of the Assets subject to the contemplated bid; and (c) a statement detailing whether the Interested Party is partnering with or otherwise working with any other interested party in connection with the potential submission of a joint bid, the identity of any such party or parties, and a concise description of the nature of such partnership or joint bid to the extent reasonably practicable. Any Interested Party who, in the Debtors' determination, qualifies for access to the Diligence Materials shall be deemed a "Potential Bidder." For the avoidance of doubt, the Stalking Horse Bidder (as defined herein) shall be a Potential Bidder and does not need to submit the Preliminary Bid Documents.

The Debtors shall grant the Stalking Horse Bidder and, upon execution of a valid Confidentiality Agreement and up to and including the Bid Deadline, any Potential Bidder, access to the Data Room or additional information allowing such Potential Bidder to conduct due diligence on the potential acquisition of some or all of the Assets. Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets: (a) to any person or entity who (i) is not a Potential Bidder, (ii) does not comply with the participation requirements set forth above, or (iii) in the case of competitively sensitive information, is a competitor of the Debtors; and (b) if and to the extent doing so would (1) violate any law to which the Debtors are subject, including any privacy law, (2) result in the disclosure of any trade secrets of third parties in breach of any contract with such third party, (3) violate any legally-binding obligation of any Debtor with respect to confidentiality, non-disclosure, or privacy, or (4) jeopardize protections afforded to any Debtor under the attorney-client privilege or the attorney work product doctrine (provided that, in the case of each of clauses (1) through (4), the Debtors shall use commercially reasonable efforts to (x) provide such access as can be provided (or otherwise convey such information regarding the applicable matter as can be conveyed) without violating such privilege, doctrine, contract, obligation or law and (y) provide such information in a manner without violating such privilege, doctrine, contract, obligation or law). Notwithstanding the foregoing, the Debtors reserve the right, in their discretion, to withhold or limit access to any information that the Debtors determine to be sensitive or otherwise not appropriate to disclose to any Potential Bidder. The Debtors shall provide the Stalking Horse

Bidder with any information provided to a Potential Bidder that has not already been provided to the Stalking Horse Bidder.

The Debtors may terminate access to the Data Room and any other non-public information in their reasonable discretion at any time, including if (a) a Potential Bidder fails to become a Qualified Bidder (as defined herein) or (b) these Bid Procedures are terminated. The Potential Bidder shall return or destroy any non-public information the Debtors or their advisors provided to the Potential Bidder in accordance with the terms of the confidentiality agreement executed by the Debtors and the Potential Bidder.

***4. Due Diligence from Potential Bidders***

Each Interested Party, Potential Bidder, and Qualified Bidder (as defined herein) (each, a "Bidder" and, collectively, the "Bidders") shall comply with all requests for additional information and due diligence access by the Debtors or their advisors regarding such Bidder and its contemplated Sale. Failure by a Potential Bidder (other than the Stalking Horse Bidder) to comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that the Potential Bidder is not a Qualified Bidder. Failure by a Qualified Bidder (other than the Stalking Horse Bidder) to comply with such requests for additional information and due diligence access will be a basis for the Debtors to determine that a bid made by a Qualified Bidder (other than the Stalking Horse Bidder) is not a Qualified Bid.

**B. Auction Qualification Process**

1. ***Stalking Horse Bidder***.

The Debtors have entered into two asset purchase agreements with Thor CALAP, LLC (the "Stalking Horse Bidder") – one for the Tarbush Assets (the "Tarbush APA") and another for the Pyote Assets (the, "Pyote APA," and with the Tarbush APA, collectively, the "Stalking Horse APA"). Collectively, the Tarbush APA and the Pyote APA contemplate the sale of substantially all of the Debtors Assets (the "Stalking Horse Bid").[4] The Stalking Horse Bidder is a Qualified Bidder and the Stalking Horse Bid is a Qualified Bid.

***2. Form of Asset Purchase Agreement***

[4] Any summary of the Stalking Horse APA contained herein is qualified in its entirety by the actual terms and conditions of the Stalking Horse APA attached hereto as **Exhibit B**. To the extent that there is any conflict between the summary contained herein and the actual terms and conditions of the Stalking Horse APA, the terms and conditions of the applicable Stalking Horse APA shall control in all respects.

A Potential Bidder must submit a proposed asset purchase agreement, similar in form and substance, as modified, to the applicable Stalking Horse APA, accompanied by a comparison of such asset purchase agreements to the Stalking Horse APA.

**C. Bid Process**

***1. Bid Deadline***

**The Bid Deadline is September 8, 2026 at 5:00 p.m. (EST (the "Bid Deadline").** On or before the Bid Deadline, a Qualified Bidder (other than the Stalking Horse Bidder) that desires to make an irrevocable offer for the purchase of all, substantially all, or some of the Assets (each, a "Bid") shall deliver written and electronic copies of its Bid to the Recipient Parties. The Debtors may extend the Bid Deadline for any reason whatsoever in their reasonable business judgment for all or certain Potential Bidders.

***2. Qualified Bid Requirements***

To be eligible to participate in the Auction and to be eligible for consideration as a Qualified Bidder, a Potential Bidder (other than the Stalking Horse Bidder) must deliver to the Recipient Parties a Bid, so as to be received by the Recipient Parties on or before the Bid Deadline, that meets the following requirements (collectively, the "Qualified Bid Requirements"):

i. State that the Bid includes an offer by the Potential Bidder to effectuate a Sale and identify with specificity which Assets are included in the Bid. Each Potential Bidder must specify whether the Bid is conditioned on purchasing all Assets included in the Bid or whether the Bid should be viewed as separate Bids for one or more sets of Assets (in which case, the Bid must specify such sets).

ii. Includes a binding, definitive and fully executed asset purchase agreement, which (1) shall be in form and substance substantially similar to the Stalking Horse APA and marked to reflect only those changes required as a condition of such Qualified Bidder's to closing the Sale, (2) shall not contain any provisions entitling such Qualified Bidder to any break-up fee, expense reimbursement or other bid protections of any kind, (3) waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of the bid or participation in any auction, and (4) otherwise contains terms and conditions that are more favorable to the Debtors than those set forth in the Stalking Horse APA. An asset purchase agreement, together with its schedules and exhibits, submitted in accordance with these Bidding Procedures, shall be referred to herein as a "Qualified Bidder APA."

iii. Set forth the cash purchase price (the "Cash Consideration") and identify any non-cash consideration included in such Bid (together with the Cash Consideration, the "Bid Purchase Price"), including, without limitation, which Executory Contracts (as defined below)

the Potential Bidder expects the Debtors to assume and assign to the Bidder and which liabilities, if any, of the Debtors the Potential Bidder is agreeing to assume (the "Assumed Liabilities"). The Bid Purchase Price associated with each Bid may include only cash and/or other consideration acceptable to the Debtors. The Cash Consideration of any Qualified Bid with respect to all or any portion of the Assets must be no less than an amount necessary to satisfy the Expense Reimbursement, as defined herein, and be a Topping Bid with respect to the applicable Assets. In order for the Bid to qualify as a "Topping Bid," it must provide for consideration at Closing (as defined herein) that is equal to or in excess of the sum of: (i) the Stalking Horse Bid; (ii) the Expense Reimbursement; and (iii) an incremental overbid of $250,000 for the Pyote Assets and $500,000 for the Tarbush Assets (the "Minimum Increment"), which may be adjusted for any Bid relating to Assets not contemplated to be sold under the Stalking Horse APA). Any Bid must also include a statement as to whether the Bid is conditioned on purchasing all Assets or whether the Bid should be viewed as separate Bid for one or more sets of Assets.

iv. Other than a Stalking Horse Bid, be accompanied by a good faith deposit by wire transfer or certified check (payable to the order of the Debtors), in an amount equal to five percent (5%) of the cash consideration of the Bid (each, a "Good Faith Deposit"); *provided that*, to the extent a Bid is modified at or prior to the Auction in any manner that increases the proposed purchase price contemplated by such Bid, the Debtors reserve the right to require that such Potential Bidder increase its Good Faith Deposit so that it equals five percent (5%) of the increased aggregate purchase price promptly and in no event no later than one (1) business day following the conclusion of the Auction. The Good Faith Deposits shall be **deposited no later than September 8, 2026, at 5:00 pm (EST)** with the Debtors or the escrow agent identified by the Debtors (the "Escrow Agent").

v. Provides that such Bid is not subject to contingencies of any kind, including, without limitations, contingencies related to financing, internal approval, or due diligence.

vi. Provides that such Bid is binding, unconditional, and irrevocable until the earlier of: (a) such Bid being determined by the Debtors not to be a Qualified Bid; (b) if such Bid is not chosen by the Debtors at the Auction to be the Winning Bid or Back-Up Bid, the date of entry by the Bankruptcy Court of an order approving the Sale to another Qualified Bidder; (c) if such Bid is chosen by the Debtors to be the Winning Bid or the Back-Up Bidder, the date which is the earlier to occur of (i) the first business day after the closing of the Sale with the Winning Bidder, and (ii) thirty (30) days following the date the

order approving the Sale to the Winning Bidder shall have become a final, non-appealable, order ("Final Order").

vii. Contain evidence that the Potential Bidder has obtained the necessary authorizations or approvals, as required by that Bidder's governing documents, with respect to the submission of the Bid and the consummation of the Sale.

viii. Include a statement or evidence reflecting (1) that the Potential Bidder is prepared to consummate the Sale upon entry of the Sale Order by the Court approving the Sale to the Winning Bidder and (2) consummation shall not be contingent on obtaining requisite government, regulatory, or other third-party approvals.

ix. Each Bid must include evidence of the Potential Bidder's (or any other relevant assignee's) ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Bidder's (or any other relevant assignee's) ability to perform future obligations arising under any Executory Contracts included in its Bid. The Debtors may require the following information in connection with demonstrating adequate assurance of future performance: (a) information evidencing the Potential Bidder's (or any other relevant assignee's) financial wherewithal and willingness to perform under any Executory Contracts included in the bid, which information may include (1) a corporate organizational chart or similar disclosure identifying corporate ownership and control, (2) financial statements, (3) tax returns, and (4) annual reports; and (b) the Bidder's (or any other relevant assignee's) proposed use of any leased premises or other property, if any, included in the bid (the "Adequate Assurance Information"). All Adequate Assurance Information must be in a form that will permit its immediate dissemination to Contract Counterparties (as defined below).

x. Certifies that the Potential Bidder: (1) has not engaged in any collusion with respect to any Bid or the Sale, specifying that it did not agree with any other Bidders to control price; (2) agrees not to engage in any collusion with respect to any Bids, the Auction, or the Sale; and (3) by submitting a Bid is agreeing, and shall be deemed to have agreed to abide by and honor the terms of the Bidding Procedures.

xi. Includes an acknowledgement and representation that the Potential Bidder has had an opportunity to conduct all due diligence regarding the Debtors' Assets prior to submitting its Bid and that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or assets in making its Bid.

xii. Includes an acknowledgment that by submitting a Bid, the Potential Bidder agrees to be a Back-Up Bidder in accordance with the terms of the Bid Procedures, should such Bid be so selected.

xiii. If the Potential Bidder was formed in whole or part for the purpose of acquiring all or part of the Assets, provides evidence which is reasonably satisfactory to the Debtors, from each of the equity holders of such Potential Bidder demonstrating that such Bidder has, or will have access to, the financial resources needed to consummate the Sale if it becomes the Winning Bidder, and that the use of such resources to consummate the Sale has been authorized and approved by such entity's board of directors (or comparable governing body); *provided*, that the Debtors reserve the right to limit or waive this requirement for one or more Potential Bidders.

xiv. Provides that the Debtors have the right to pursue all available damages in the event of the Potential Bidder's breach of, or failure to perform under, the Qualified Bidder's APA.

A Qualified Bid will be valued by the Debtors based upon any and all factors that the Debtors deem pertinent in their reasonable business judgment (in consultation with the Committee, if any), including, among other things: (a) the amount of the Qualified Bid; (b) the risks and timing associated with consummating the transaction(s) with the Qualified Bidder; (c) any excluded Assets or potentially Assumed Contracts; (d) the number, type, and nature of any changes to the Stalking Horse APA; (e) the net benefit to the Debtors' estates; (f) the tax consequences of such Qualified Bid; and (g) any other factors that the Debtors (in consultation with the Committee, if any), reasonably may deem relevant.

### ***3. Designation of Qualified Bid and Qualified Bidder***

A "Qualified Bidder" is a Potential Bidder (other than the Stalking Horse Bidder), who submits a Bid by the Bid Deadline that satisfies the Qualified Bid Requirements, and that the Debtors determine is reasonably likely to be able to consummate a Sale (or Sales, as applicable) if selected as a Winning Bidder (each a "Qualified Bid"). The Debtors shall determine and notify any Potential Bidder as to whether such Potential Bidder is a Qualified Bidder no later than **September 9, 2026, at 5:00 p.m. (EST)**.

For the avoidance of doubt, the Stalking Horse Bid is deemed a Qualified Bid, and the Stalking Horse Bidder is deemed a Qualified Bidder, for all purposes and requirements pursuant to the Bidding Procedures, notwithstanding the requirements that a Potential Bidder must satisfy to be a Qualified Bidder.

**The Debtors reserve the right to exclude any party (other than the Stalking Horse Bidder) from the Auction if the Debtors determine, in their reasonable business judgment that such party did not submit a Qualified Bid (including solely because such party did not put forward a good faith Bid).**

#### ***4. Disposition of Good Faith Deposits***

The Debtors shall return the Good Faith Deposits of all Qualified Bidders, other than the Winning Bidder and the Back-Up Bidder, within five (5) business days following entry by the Bankruptcy Court of an order authorizing the Sale to the Winning Bidder; ***provided, however***, that:

i. the Good Faith Deposit of a Qualified Bidder shall be forfeited if the Qualified Bidder attempts to withdraw its Qualified Bid, except as may be permitted by the Bidding Procedures, during the time the Qualified Bid remains binding and irrevocable under the Bidding Procedures. The Debtors and their estates shall be entitled to retain such Qualified Bidder's Good Faith Deposit as partial compensation for the damages caused to the Debtors and their estates as a result of the Qualified Bidder's failure to adhere to the terms of the Bidding Procedures and/or the relevant Qualified Bid;

ii. Deposit of the Winning Bidder shall be credited to the Purchase Price. If the Winning Bidder (or Back-Up Bidder, as applicable) fails to consummate the Sale, however, then such Bidder's Deposit will be irrevocably forfeited to the Debtors and may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, pursuant to the applicable asset purchase agreement.

iii. The Good Faith Deposit of the Back-Up Bidder shall be returned to the Back-Up Bidder within five (5) business days following the date the Back-Up Bid is no longer required to be open and irrevocable.

### D. The Auction and Procedures

#### ***1. The Auction***

Other than as set forth herein, if the Debtors receive more than one Qualified Bid for any particular Asset or portion of Assets by the Bid Deadline, the Debtors shall conduct the Auction to determine the Winning Bidder(s) in their reasonable business judgment with respect to such Assets or portion of the Assets. If the Debtors do not receive a Qualified Bid (other than the Stalking Horse Bid) for any particular Asset by the Bid Deadline, the Debtors will not conduct the Auction with respect to such Asset.

The Auction (if necessary) will take place **on September 10, 2026, commencing at __:00 _.m. (EST),** either (a) at the offices of Archer & Greiner, P.C., 1025 Laurel Oak Road, Voorhees, NJ 08043, or (b) virtually, or (c) at such other date, time, and location as designated by the Debtors. If the Debtors conduct the Auction virtually, the Debtors will provide instructions setting forth how to attend the Auction to the participants and other attendees via electronic mail. The Debtors will provide notice (via electronic mail or otherwise) of any change in the date, time, or location of the Auction to Qualified Bidders, and will cause publication of such change to occur on the Verita Global Website.

The Debtors may determine to cancel the Auction for reasons consistent with their fiduciary obligations; *provided that* the Debtors shall provide all Qualified Bidders with advance notice of cancellation of the Auction by the later of (a) one (1) business day prior to the Auction or (b) the Baseline Bid Deadline (as defined below).

If no Qualified Bids other than the Stalking Horse Bid are received prior to the Bid Deadline, then the Debtors may determine to cancel the Auction and declare the Stalking Horse Bid as the Winning Bid. The Debtors additionally reserve the right to adjourn the Auction at any time.

***2. The Auction Procedures***

The Auction (if necessary) will be conducted by the Debtors in accordance with the following procedures (the "Auction Procedures"):

i. Except as otherwise determined by the Debtors in their business judgment, only the Debtors, the U.S. Trustee, any Qualified Bidders, the Committee (if any), and, in each case, the respective representatives and professionals of the foregoing parties, shall be entitled to attend the Auction.

ii. Except as otherwise provided herein, only Qualified Bidders shall be entitled to bid at the Auction.

iii. The Qualified Bidders may appear virtually themselves or through duly-authorized representatives at the Auction.

iv. At the commencement of the Auction, the Debtors may announce additional procedural and related rules governing the Auction, including time periods available to all Qualified Bidders to submit successive Bid(s).

v. Bidding at the Auction shall commence at the amount of the Baseline Bid. Prior to 5:00 p.m. (prevailing Eastern Time) on the day that is one calendar days before the Auction (the "Baseline Bid Deadline"), the Debtors will provide all Qualified Bidders (including the Stalking Horse Bidder), with a notice identifying which Qualified Bid is the Baseline Bid. Subsequent Bids (each an "Overbid") shall be an increase over the Baseline Bid or previous Overbid, in an amount equal or greater than the Minimum Increment. The Debtors reserve the right to reduce or increase the Minimum Increment in their discretion at the Auction.

vi. To the extent the Stalking Horse Bidder submits a higher bid, the Stalking Horse Bidder shall have the right (but not the obligation) to increase its bid by using, as a credit, the amount of the Bid Protections when determining whether the Stalking Horse Bidder has topped the previous bid by the required amount.

vii. Any Overbid made from time to time by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (a) the Debtors accept a bid submitted by another Qualified Bidder during the Auction as an Overbid, and (b) such prior Overbid is not selected as the Back-Up Bid.

viii. During the course of the Auction, the Debtors shall, after submission of each Overbid, promptly inform each Qualified Bidder of the terms of the previous bids and inform each Qualified Bidder which Overbid(s) reflect, in the Debtors' view, the highest or otherwise best Bid(s) for the applicable Assets. Each Qualified Bidder will be permitted a reasonable time to respond to previous bids at the Auction, as determined by the Debtors.

ix. The Debtors shall not consider any Bids or Overbids submitted after the closing of the Auction and any and all such Bids and Overbids shall be deemed untimely.

x. The Debtors, in their reasonable business judgment, may reject, at any time before entry of an order of the Court approving a Winning Bid, any Bid (other than the Stalking Horse Bid) that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, (iii) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders, (iv) likely to lack the support of their stakeholders in seeking Court approval thereof, or (v) otherwise violative of any of the Debtors' fiduciary obligations.

xi. The Debtors have the right to request any additional information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by their proposal and any further information that the Debtors believe is reasonably necessary to clarify and evaluate any bid made by a Qualified Bidder during the Auction.

xii. The Debtors reserve the right, in their reasonable business judgment, to adjourn the Auction one or more times to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require that the Qualified Bidder has sufficient cash on hand or has received sufficient noncontingent debt and/or equity funding commitments to consummate the

proposed transaction at the prevailing amount. The Debtors shall promptly file notice of such adjournment with the Court.

xiii. The Debtors, in their business judgment, reserve the right to amend, waive, or otherwise modify the Auction Procedures at any time, including without limitation, the time, place, attendance, and format of the Auction in a manner that they determine will maximize value.

Nothing in these Auction Procedures will prevent the Debtors from exercising their respective fiduciary duties under applicable law.

***3. Auction Results***

The Auction shall continue until there is only one Qualified Bid for all of the Assets (or multiple non-overlapping Qualified Bids for any subsets of the Assets if there is no single Qualified Bid for all the Assets) that the Debtors determine, in the exercise of their business judgment, is the highest or otherwise best Qualified Bid(s) (such Qualified Bid(s), the "Winning Bid(s)", and such Qualified Bidder(s), the "Winning Bidder(s)"), and that further bidding is unlikely to result in a higher or otherwise better Qualified Bid, at which point, the Auction will be closed. The Debtors shall also identify the Qualified Bidder(s) that submitted the next highest or otherwise best Qualified Bid(s) as a back-up bid (a "Back-Up Bid(s)" and the Bidders submitting such Bid(s), as the "Back-Up Bidder(s)")

As soon as reasonably practicable after the closing of the Auction, the Debtors shall file with the Court notice of the auction results ("Notice of Auction Results"), serve such Notice on the Notice Parties (as defined below), and cause such Notice to be published on the Debtors' restructuring website at: https://www.veritaglobal.net/Poolin/inquiry (the "Verita Global Website"), which Notice shall (a) identify each of Winning Bidder(s) and Back-Up Bidder(s); and (b) set forth the Sale Objection Deadline (as defined below), the date, time, and location of the Sale Hearing, and any other relevant dates or other information necessary to reasonably apprise the parties of the outcome of the Auction.

The Winning Bidder, Back-Up Bidder, and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which the Winning Bid(s) and Back-Up Bid(s) were made.

**E. The Sale**

***1. Free of Any and All Interests***

Except as otherwise provided in the asset Qualified Bidder APA of the Winning Bidder(s) and subject to the approval of the Court, all of the Debtors' rights, title, and interest in and to the Assets subject thereto shall be sold free and clear of any Encumbrances to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Encumbrances to attach to the proceeds of the Sale of the applicable Assets with the same validity and priority as such Encumbrances were held against the applicable Assets prior to the Sale.

### *2. Sale Objections*

Any objections to the Sale, including (a) any objection to a sale of the Assets free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and (b) the entry of any Sale Order (each such objection, a "Sale Objection"), must: (i) be in writing; (ii) state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; and (iii) filed with the Court and served on the following parties (collectively, the "Objection Notice Parties") no later than **September 14, 2026 at 5:00 p.m. (EST)** (the "Sale Objection Deadline"):

i. proposed counsel to the Debtors: Archer & Greiner P.C., 1025 Laurel Oak Road, Voorhees, NJ 08043, Attn: Stephen M. Packman (spackman@archerlaw.com), Douglas G. Leney (dleney@archerlaw.com), Natasha M. Songonuga (nsongonuga@archerlaw.com), and Alexander J. Andrews (aandrews@archerlaw.com);

ii. the Office of the United States Trustee for the District of New Jersey, One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, NJ 07102;

iii. counsel for the Committee;

iv. counsel for the Stalking Horse Bidder;

v. if applicable, counsel for the relevant Winning Bidder; and

vi. if applicable, counsel to the relevant Back-Up Bidder.

Any party who fails to file and serve a timely Sale Objection in accordance with the terms of theses Bidding Procedures and the Bid Procedures Order shall be forever barred from asserting, at the Sale Hearing or thereafter, any Sale Objection or Supplemental Sale Objection, as applicable, to the relief requested in the Motion, or to the consummation or performance of the sale of the Assets, including the transfer of Assets to the Winning Bidder free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" to such sale for purposes of section 363(f) of the Bankruptcy Code.

### *3. Sale Hearing*

The Sale Hearing will occur on September ____ 2026 at __:00 _.m. (EST) before the Hon. [●], United States Bankruptcy Court for the District of New Jersey, 402 E State St, [●] Floor, Trenton, NJ 08608. At the Sale Hearing, the Debtors will seek entry of the Sale Order authorizing and approving one or more Sale(s) to the Winning Bidder(s). The Sale Hearing may be adjourned or rescheduled without notice or with limited and shortened notice to parties, including by (i) an announcement of such adjournment at the Sale Hearing or at the Auction or (ii) the filing of a notice of adjournment with the Court prior to the commencement of the Sale Hearing. If any Winning Bidder fails to consummate an approved Sale in accordance with its applicable Qualified Bidder APA or such Qualified Bidder APA is terminated, the Debtors shall be authorized, but not

required, to deem the applicable Back-Up Bid(s), as disclosed at the Sale Hearing, as the Winning Bid, and the Debtors shall be authorized, but not required, to consummate the Sale with such Back-Up Bidder(s).

## II. PROVISIONS RELATED TO THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS

As part of a Sale, the Debtors may assume and assign certain of their executory contracts and unexpired leases (collectively, the "Executory Contracts") to one or more of the Winning Bidder(s), The procedures governing the Debtors identification of Executory Contracts to be identified in the Assigned Contracts Schedule(s) to be filed by the Debtors and the non-Debtor counterparties' (the "Contract Counterparties") fights and obligations to such identification, including, but not limited to, objecting to such identification and/or the amounts that the Debtors believe necessary to cure all monetary defaults under each such identified Executory Contract pursuant to section 365 of the Bankruptcy Code, are governed by the assumption and assignment procedures set forth in the Bid Procedures Order. **All Contract Counterparties should refer to the Bid Procedures Order, which provides for the following relevant dates and declines:**

a. Deadline for the Debtors to file and served the Assumption and Assignment Notice (as defined in the Bid Procedures Order) is **August 21, 2026**; and

b. Deadline for Contract Counterparties to file Assumption and Assignment Objections as **September 14, 2026 at 5:00 p.m. (EST)**.

**For the avoidance of doubt, unless a Contract Counterparty to an Executory Contract listed on an Assigned Contracts Schedule or a Supplemental Assigned Contracts Schedule has timely and properly filed and served an objection to an Assumption and Assignment Notice or a Supplemental Assumption and Assignment Notice such Contract Counterparty shall (i) be forever barred from objecting to the assumption and assignment of such Executory Contract, including with respect to Cure Amount, and from asserting any additional cure or other amounts with respect to such Contract, and the Debtors and the Winning Bidder shall be entitled to rely solely upon the Cure Amounts set forth in such notice, as applicable; (ii) be deemed to have consented to the assumption and assignment to the Winning Bidder of such Executory Contract; and (iii) be forever barred, estopped, and permanently enjoined from asserting or claiming against the Debtors, the Winning Bidder or their respective property that any additional prepetition amounts are due or other prepetition defaults exist, that conditions to assignment must be satisfied under such Executory Contract or that there is any objection or defense to the assumption and assignment of such Contract. In addition, the Cure Amount set forth in the Assumption and Assignment Notice or a Supplemental Assumption and Assignment Notice, as applicable, shall constitute a final determination of the total Cure Amount required to be paid by the Debtors in connection with the assumption and assignment of such Executory Contract.**

## III. RESERVATION OF RIGHTS TO MODIFY BIDDING PROCEDURES

The Debtors reserve their rights to modify these Bidding Procedures or to waive any provision or requirement herein in their reasonable business judgment and in a manner consistent with the maximization of their estates in any manner that will best promote the goals of the bidding process, or impose, at or before the Auction, additional customary terms and conditions on the sale of the Assets, including, without limitation: (a) extending the deadlines set forth in the Bidding Procedures; (b) adjourning the Auction at or prior to the Auction and/or adjourning the Sale Hearing prior to such hearing or in open Court without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; (e) rejecting any or all bids or Qualified Bids if, in the Debtors' reasonable, good-faith business judgment, following consultation with the Committee, the Debtors determine that such Qualified Bid is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or related rules or the terms set forth herein, or (iii) contrary to the best interests of the Debtors; and (f) adjusting the applicable Minimum Overbid Increments. The Debtors further reserve the right, at any time, and in consultation with the Committee, for any reason, in their reasonable business judgment and consistent with their fiduciary duties, to decline to pursue the sale contemplated by these Bidding Procedures. Notwithstanding the foregoing, (x) any modification to these Bidding Procedures which extends the timelines included herein shall be subject to the consent of the Stalking Horse Bidder, whose consent shall not be unreasonably withheld; (y) any such modification shall treat the Stalking Horse Bidder as a Qualified Bidder; and (z) any modification to these Bidding Procedures shall not be inconsistent with the terms of the Bid Procedures Order, the Bankruptcy Code, or the Bankruptcy Rules. The Debtors shall provide written notice of any such modification to the Stalking Horse Bidder and each Qualified Bidder (and their respective counsel) as soon as reasonably practicable (email shall suffice).

## IV. <u>CONSENT TO JURISDICTION</u>

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, Sale Transaction, the construction and enforcement of these Bidding Procedures or the Order, and any other agreement entered into in connection with any proposed Sale Transaction, as applicable.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute by heard by the Court on an expedited basis.

# **Exhibit 2**

## Notice of Auction and Sale Hearing

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**ARCHER & GREINER, P.C.**
Stephen M. Packman, Esq.
Douglas G. Leney, Esq.
Natasha M. Songonuga, Esq.
Alexander J. Andrews, Esq.
(*Pro Hac Vice* Admission Pending)
1025 Laurel Oak Road
Voorhees, NJ 08043
Telephone: (856) 795-2121
Facsimile: (856) 795-0574
Email: spackman@archerlaw.com
dleney@archerlaw.com
nsongonuga@archerlaw.com
aandrews@archerlaw.com

*Proposed Attorneys for Debtors*

In re:

POOLIN TECHNOLOGY PTE. LTD., *et al.*,[1]

Debtors.

Case No. 26-18325

Chapter 11

(Joint Administration Requested)

## NOTICE OF SALE BY AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE** that, on [●], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Approving Bidding Procedures for the Sale of Substantially all of the Debtors' Assets, (II) Authorizing the Debtors to Enter Into One or More Stalking Horse Purchase Agreement and Provide Bid Protections, (III) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (IV) Approving Procedures for the Assumption and Assignment of or Rejection of Designated Executory Contracts and Unexpired Leases, (V) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof,*

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Poolin Technology Pte. Ltd., a Singapore Private Limited Company; Lonestar Dream Inc. (5105); and Lonestar Taproot LLC (4118). The location of the Debtors' service address for purposes of these Chapter 11 Cases is: c/o Michael DuFrayne, CRO, 2564 US Highway 1, PMB #16884166, Lawrence, NJ 08648.

*and (VI) Granting Related Relief* [ECF No. [●]] (the "Bid Procedures Order")[2]in the chapter 11 cases of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that, the Debtors are soliciting offers for the purchase of substantially all of their Assets consistent with the procedures (the "Bidding Procedures") approved by the Court pursuant to the Bid Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that, the deadline by which all non-binding indications of interest for some or all of the Assets must be received pursuant to the Bidding Procedures is **August 27, 2026**.

**PLEASE TAKE FURTHER NOTICE** that, any party interested in submitting a bid for any of the Debtors' Assets should contact the proposed counsel for the Debtors. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Order, the Bidding Procedures, or the Order, as applicable, shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bidding Procedures and the Order, the deadline by which all Qualified Bids must be submitted is **September 8, 2026 ("Bid Deadline")**.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bidding Procedures, the Debtors may conduct the Auction of the Assets on **September 10, 2026, at ___:00 a.m. (EST)** either (a) at the offices of **Archer & Greiner P.C., 1025 Laurel Oak Road, Voorhees, NJ 08043,** or (b) virtually, or (c) at such other date, time, and location as designated by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise determined by the Debtors, only the Debtors, the U.S. Trustee, any Qualified Bidders, the official committee of unsecured creditors appointed in these Chapter 11 Cases (the "Committee"), and, in each case, the respective representatives and professionals of the foregoing parties, shall be entitled to attend the Auction, and only Qualified Bidders will be entitled to make Overbids at the Auction. All interested or potentially affected parties should carefully read the Bidding Procedures and the Order.

**PLEASE TAKE FURTHER NOTICE** that any objections to the Sale, including (i) any objection to a sale of Assets free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and (ii) the entry of any Sale Order (each such objection, a "Sale Objection") must be: (A) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (B) filed with the Court on or before **September 14, 2026, at 5:00 p.m. (EST)** ("Sale Objection Deadline"); and (C) served on (i) the proposed counsel to the Debtors, (ii) the Office of the United States Trustee for the District of New Jersey, (iii) counsel for the Stalking Horse Bidder, counsel for the committee, (iv)

---

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Bid Procedures Order and the Bidding Procedures, as applicable. Any summary of the Bidding Procedures or the Bid Procedures Order (or any provision thereof) contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any inconsistency between any summary in this Sale Notice and the terms and conditions of either of the Bidding Procedures or the Bid Procedures Order, the actual terms and conditions in those documents shall control.

if applicable, counsel for the relevant Winning Bidder and/or counsel for the relevant Back-Up Bidder (collectively, the "Objection Notice Parties") by the Sale Objection Deadline.

**PLEASE TAKE FURTHER NOTICE** that the Debtors may seek approval of the Sale of the Assets at a hearing scheduled to commence on **September __ 2026, __:00 _.m. (EST)**, before the Honorable ________, at the United States Bankruptcy Court for the District of New Jersey, 402 E State St, [●] Floor, Trenton, NJ 08608.

**CONSEQUENCES OF FAILING TO TIMELY MAKE A SALE OBJECTION**

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN SALE OBJECTION ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE TRANSACTION, INCLUDING WITH RESPECT TO THE TRANSFER OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS MAY BE SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT OR THE PLAN, AS APPLICABLE.**

**PLEASE TAKE FURTHER NOTICE** that copies of the Order or any other documents in the Debtors' Chapter 11 Cases are available upon request to Verita Global by calling (877) 634-7165 (U.S./Canada) or (424) 236-7221 (International); (b) by visiting the Debtors' restructuring website at be https://www.veritaglobal.net/Poolin/inquiry; or (c) for a fee via PACER by visiting http://www.njd.uscourts.gov.

Dated: July 22, 2026

**ARCHER & GREINER, P.C.**

*/s/ Stephen M. Packman*

Stephen M. Packman, Esq.
Douglas G. Leney, Esq.
Natasha M. Songonuga, Esq.
Alexander J. Andrews, Esq.[3]
1025 Laurel Oak Road
Voorhees, NJ 08043
Telephone: (856) 795-2121
Facsimile: (856) 795-0574
Email: spackman@archerlaw.com
dleney@archerlaw.com
nsongonuga@archerlaw.com
aandrews@archerlaw.com

*Proposed Counsel to the Debtors*

[3] *Pro Hac Vice* admission pending.

# Exhibit 3

## Assumption and Assignment Notice

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**ARCHER & GREINER, P.C.**
Stephen M. Packman, Esq.
Douglas G. Leney, Esq.
Natasha M. Songonuga, Esq.
Alexander J. Andrews, Esq.
(*Pro Hac Vice* Admission Pending)
1025 Laurel Oak Road
Voorhees, NJ 08043
Telephone: (856) 795-2121
Facsimile: (856) 795-0574
Email: spackman@archerlaw.com
dleney@archerlaw.com
nsongonuga@archerlaw.com
aandrews@archerlaw.com

*Proposed Attorneys for Debtors*

In re:

POOLIN TECHNOLOGY PTE. LTD., *et al.*,[1]

Debtors.

Case No. 26-18325

Chapter 11

(Joint Administration Requested)

**NOTICE OF CURE AMOUNT AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL ASSETS**

YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES ARE A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON **EXHIBIT A** ATTACHED HERETO.

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Poolin Technology Pte. Ltd., a Singapore Private Limited Company; Lonestar Dream Inc. (5105); and Lonestar Taproot LLC (4118). The location of the Debtors' service address for purposes of these Chapter 11 Cases is: c/o Michael DuFrayne, CRO, 2564 US Highway 1, PMB #16884166, Lawrence, NJ 08648.

On July 22, 2026 (the "Petition Date"), the debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), filed with the United States Bankruptcy Court for the District of New Jersey (the "Court") the *Debtors' Motion For Entry Of (I) An Order (A) Approving Certain Bidding Procedures And The Form And Manner Of Notice Thereof, (B) Authorizing The Debtors To Designate The Stalking Horse Bidder, (C) Scheduling An Auction And A Hearing On The Approval Of The Sale Of Substantially All Of The Debtors' Assets, (D) Authorizing The Debtors To Enter Into The Purchase Agreements, (E) Establishing Certain Assumption And Assignment Procedures And Approving The Manner Of Notice Thereof, And (F) Granting Related Relief; And (II) An Order (A) Authorizing The Sale Of Substantially All Of The Debtors' Assets Free And Clear Or Encumbrances, (B) Approving The Assumption And Assignment Of The Potentially Assigned Contracts, And (C) Granting Related Relief*[ECF No. [●]] (the "Sale Motion"), seeking, among things, entry of (a) an order (i) approving certain bidding procedures (the "Bidding Procedures") to be used in connection with the Sale of substantially all of the Debtors' Assets; (ii) scheduling an auction (the "Auction") and approving the form and manner of notice thereof, (iii) approving assumption and assignment procedures for the assumption and assignment by the Debtors of certain executory contracts and unexpired leases (the "Assumption and Assignment Procedures"), and (iv) scheduling a sale hearing (the "Sale Hearing").

On August __, 2026, the entered the *Order (I) Approving Bidding Procedures for the Sale of Substantially all of the Debtors' Assets, (II) Authorizing the Debtors to Enter Into One or More Stalking Horse Purchase Agreement and Provide Bid Protections, (III) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (IV) Approving Procedures for the Assumption and Assignment of or Rejection of Designated Executory Contracts and Unexpired Leases, (V) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (VI) Granting Related Relief* [ECF No. [●]] (the "Bid Procedures Order"),[2] which, among other things, approved the Assumption and Assignment Procedures as set forth therein.

**Cure Amounts**

In accordance with the Assumption and Assignment Procedures and the Bid Procedures Order, the Debtors may, in connection with the Sale to the Winning Bidder, seek to assume and assign to the Winning Bidder certain of the Debtors' executory contracts and unexpired leases (collectively, the "Executory Contracts"). Each of the Executory Contracts that potentially could be assumed and assigned in connection with the Sale, together with the Debtors' calculation of cure costs ("Cure Amounts") for unpaid monetary obligations under such Executory Contracts, is set forth on **Exhibit A** hereto. The inclusion of any Executory Contract on **Exhibit A** does not constitute an admission by the Debtors, any Winning Bidder, or any other party that such Executory Contract is an executory contract or an unexpired lease within the meaning of the

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Sale Motion or the Bid Procedures Order, as applicable. Any summary of the Bidding Procedures or the Bid Procedures Order (or any provision thereof) contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any inconsistency between any summary in this Notice and the terms and conditions of either of the Bidding Procedures or the Bid Procedures Order, the actual terms and conditions in those documents shall control.

Bankruptcy Code or require or guarantee that such Executory Contract ultimately will be assumed or assigned. All rights of the Debtors with respect thereto are reserved.

In addition, to the extent that any of the Cure Amounts set forth on **Exhibit A** do not reflect (i) postpetition payments that have been made by the Debtors in respect of applicable Cure Amounts or (ii) any payments that are made by the Debtors in respect of such Cure Amounts after the filing of this Notice, the respective amounts required to be paid to cure any existing defaults under the applicable Executory Contracts shall be reduced by any such corresponding postpetition payments, and the Debtors reserve their rights to update the Cure Amount set forth on **Exhibit A** accordingly, either by filing a supplemental notice with the Court or by written notice to the applicable Contract Counterparty.

## Assumption and Assignment Objections

### A. Assumption Objection Deadline.

Any Contract Counterparty that disagrees with the Debtors' proposed Cure Amount set forth on **Exhibit A** hereto or objects to a proposed assumption and assignment of its applicable Executory Contract on any basis, your objection (each an "Assumption and Assignment Objection") must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Rules, and any order governing the administration of these Chapter 11 Cases; (iii) state with specificity the nature of the objection and, if the objection pertains to (x) the proposed Cure Amount, state the cure amount alleged to be owed to the objecting Contract Counterparty, or (y) the proposed Adequate Assurance, state the adequate assurance amount purportedly required, together with any applicable and appropriate documentation in support thereof, (clauses (i)-(iii), the "Assumption and Assignment Objection Requirements"); and (iv) be filed with the Court and serve on the Objection Notice Parties (as defined in the Bid Procedures Order) no later than **September 14, 2026 at 5:00 p.m. (EST)**. .

### B. Resolution of Assumption and Assignment Objections.

Pursuant to the Bid Procedures Order, if Contract Counterparty files an Assumption and Assignment Objection and the Winning Bidder has designated that it wishes to take assignment of such Executory Contract, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, then such objection will be resolved at the Sale Hearing, but such Contract shall be assumed and assigned only upon satisfactory resolution of the Assumption and Assignment Objection, to be determined in the Winning Bidder's discretion.

If any Assumption and Assignment Objection is resolved by the Court in a manner that is not satisfactory to the Winning Bidder, the Winning Bidder shall retain the right to remove the applicable Executory Contract from the list of Assigned Contracts Schedule, and such Executory Contract shall not constitute an Assigned Contract and the Winning Bidder shall not be responsible for any Cure Amount or Adequate Protection with respect to such Executory Contract.

**C. Failure to File an Assumption and Assignment Objection.**

**UNLESS A CONTRACT COUNTERPARTY TO A CONTRACT LISTED ON EXHIBIT A HERETO HAS TIMELY AND PROPERLY FILED AND SERVED AN ASSUMPTION AND ASSIGNMENT OBJECTION SUCH CONTRACT COUNTERPARTY SHALL: (I) BE FOREVER BARRED FROM OBJECTING TO THE ASSUMPTION AND ASSIGNMENT OF SUCH ASSIGNED CONTRACT, INCLUDING WITH RESPECT TO CURE AMOUNT, AND FROM ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT TO SUCH CONTRACT, AND THE DEBTORS AND THE WINNING BIDDER SHALL BE ENTITLED TO RELY SOLELY UPON THE CURE AMOUNT SET FORTH ON EXHIBIT A HERETO; (II) BE DEEMED TO HAVE CONSENTED TO THE ASSUMPTION AND ASSIGNMENT OF THE EXECUTORY CONTRACT TO THE WINNING BIDDER; AND (III) BE FOREVER BARRED, ESTOPPED, AND PERMANENTLY ENJOINED FROM ASSERTING OR CLAIMING AGAINST THE DEBTORS, THE WINNING BIDDER, OR THEIR RESPECTIVE PROPERTY THAT ANY ADDITIONAL PREPETITION AMOUNTS ARE DUE OR OTHER PREPETITION DEFAULTS EXIST, THAT CONDITIONS TO ASSIGNMENT MUST BE SATISFIED UNDER SUCH CONTRACT, OR THAT THERE IS ANY OBJECTION OR DEFENSE TO THE ASSUMPTION AND ASSIGNMENT OF SUCH CONTRACT. IN ADDITION, THE CURE AMOUNTS SET FORTH IN EXHIBIT A HERETO SHALL CONSTITUTE A FINAL DETERMINATION OF THE TOTAL CURE AMOUNTS REQUIRED TO BE PAID BY THE DEBTORS IN CONNECTION WITH THE ASSUMPTION AND ASSIGNMENT EACH SUCH EXECUTORY CONTRACTS**.

**D. Contract Assumption and Assignment.**

Notwithstanding anything herein, the mere listing of any Executory Contract on Exhibit A attached to this Assumption and Assignment Notice or any Supplemental Assumption and Assignment Notice does not require or guarantee that such Executory Contract will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors and the Winning Bidder with respect to such Contracts are reserved. Moreover, the Debtors explicitly reserve the right, in their reasonable discretion, to seek to reject or assume each Executory Contract pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors and/or the Winning Bidder, as applicable, to designate any Executory Contract as either rejected or assumed on a post-closing basis.

Nothing herein (a) alters in any way the prepetition nature of the Executory Contracts or the validity, priority, or amount of any claims of a Contract Counterparty to any Executory Contract against the Debtors that may arise under such Executory Contract, (b) creates a postpetition contract or agreement, or (c) elevates to administrative expense priority any claims of a counterparty to any Executory Contract against the Debtors that may arise under such Executory Contract. No Executory Contract shall be deemed assumed and assigned pursuant to section 365 of the Bankruptcy Code unless listed on an Assigned Contracts Schedule attached to the final Sale Order or the Court has entered a separate order assuming and assigning such Executory Contract.

## Notice of Auction Results

The Auction, if required, will be conducted on **September 10, 2026, at ___:00 __.m. (EST)**, either (a) at the offices of Archer & Greiner, P.C., 1025 Laurel Oak Road, Voorhees, NJ 08043, or (b) virtually, or (c) at such other date, time, and location as designated by the Debtors. If the Debtors conduct the Auction virtually, the Debtors will provide instructions setting forth how to attend the Auction to the participants and other attendees via electronic mail. The Debtors will provide notice (via electronic mail or otherwise) of any change in the date, time, or location of the Auction to Qualified Bidders, and will cause publication of such change to occur on the website maintained by Verita Global, the Debtors' claims and noticing agent in these Chapter 11 Cases, located at Debtors' restructuring website at https://www.veritaglobal.net/ (the "Verita Global Website").

As soon as reasonably practicable after the closing of the Auction, the Debtors shall file with the Court notice of the auction results ("Notice of Auction Results"), serve such Notice on the Notice Parties (as defined in the Bidding Procedures), and cause such Notice to be published on the Verita Global Website, which Notice shall (a) identify each Winning Bidder and the Back-Up Bidder, if any; and (b) set forth the Sale Objection Deadline (as defined in Bidding Procedures), the date, time, and location of the Sale Hearing, and any other relevant dates or other information necessary to reasonably apprise the parties of the outcome of the Auction.

## Sale Hearing

The applicable Sale Hearing to consider approval of the Sale to the Winning Bidder is currently scheduled to take place on **September 16, 2026, at ___:00 __.m. (EST)** before the Honorable , in the United States Bankruptcy Court for the District of New Jersey, 402 E State St, [●] Floor, Trenton, NJ 08608.

## Additional Information

Copies of the Motion, the Bid Procedures Order, the Bidding Procedures, or any other documents in the Debtors' Chapter 11 Cases are available: (a) upon request to Verita Global by calling ((877) 634-7165 (U.S./Canada) or (424) 236-7221 (International); (b) by visiting the Verita Global Website; or (c) for a fee via PACER by visiting http://www.njd.uscourts.gov.

[*space intentionally left blank*]

Dated: July 22, 2026

**ARCHER & GREINER, P.C.**

*/s/ Stephen M. Packman*

Stephen M. Packman, Esq.
Douglas G. Leney, Esq.
Natasha M. Songonuga, Esq.
Alexander J. Andrews, Esq.[3]
1025 Laurel Oak Road
Voorhees, NJ 08043
Telephone: (856) 795-2121
Facsimile: (856) 795-0574
Email: spackman@archerlaw.com
dleney@archerlaw.com
nsongonuga@archerlaw.com
aandrews@archerlaw.com

*Proposed Counsel to the Debtors*

3 *Pro Hac Vice* admission pending.