UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**ARCHER & GREINER, P.C.**
Stephen M. Packman, Esq.
Douglas G. Leney, Esq.
Natasha M. Songonuga, Esq.
Alexander J. Andrews, Esq. (Admitted *PHV*)
1025 Laurel Oak Road
Voorhees, NJ 08043
Telephone: (856) 795-2121
Facsimile: (856) 795-0574
Email: spackman@archerlaw.com
dleney@archerlaw.com
nsongonuga@archerlaw.com
aandrews@archerlaw.com

*Attorneys for Debtors*

In re:

POOLIN TECHNOLOGY PTE. LTD., *et al.*, [1]

Debtors.

Chapter 11

Case No. 26-18325 (EJO)

(Jointly Administered)

Judge: Eamonn J. O'Hagan

**Hearing Date: Shortened Notice Requested**

**DEBTORS' MOTION PURSUANT TO FED. R. BANKR. P. 9019 APPROVING THE STIPULATION AND AGREED ORDER REGARDING THE OBJECTION OF DBR LAND LLC TO DEBTORS' AMENDED BIDDING PROCEDURES MOTION**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Poolin Technology Pte. Ltd. ("Poolin") and its affiliated debtors and debtors-in-possession: Lonestar Dream Inc. ("LSD"); and Lonestar Taproot, LLC ("LST" and collectively, the

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Poolin Technology Pte. Ltd., a Singapore Private Limited Company; Lonestar Dream Inc. (5105); and Lonestar Taproot LLC (4118). The location of the Debtors' service address for purposes of these Chapter 11 Cases is: c/o Michael DuFrayne, CRO, 2564 US Highway 1, PMB #16884166, Lawrence, NJ 08648.

"Debtors"), by and through their undersigned counsel, hereby respectfully move (this "Motion") this Court for entry of an order pursuant to Fed. R. Bankr. P. 9019 Approving the Stipulation and Agreed Order attached hereto as **Exhibit A** resolving, among other things, the objection of DBR Land LLC ("DBR") to the *Debtors' Amended Motion for Entry of (I) an Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Debtors to Designate the Stalking Horse Bidder, (C) Scheduling an Auction and a Hearing on the Approval of the Sale of Substantially All of the Debtors' Assets, (D) Authorizing the Debtors to Enter into the Purchase Agreements, (E) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof, and (F) Granting Related Relief; and (II) an Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of Encumbrances, (B) Approving the Assumption and Assignment of the Potentially Assigned Contracts, and (C) Granting Related Relief* [Docket No. 30] (the "Sale Motion"). Substantially contemporaneously with the filing of this Motion, the Debtors also respectfully submit an application seeking expedited consideration and shortened notice in connection herewith. In support of this Motion, the Debtors rely on the *Declaration of Michael DuFrayne in Support of the Stipulation and Agreed Order Resolving DBR Land LLC's Informal Objection to the Debtors' Sale Motion* [Docket No. 118] (the "DuFrayne Declaration") which is fully incorporated herein by reference. In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. The Court (defined below) has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the District of New Jersey* as of September 18, 2012. The Debtors hereby consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion, to the extent that it is later determined that the Court, absent consent of the parties, cannot enter

final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6004, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 6004-1, 6004-2, 9013-1, 9013-3, and 9019-3 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

## FACTUAL AND PROCEDURAL BACKGROUND

4. On July 22, 2026 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Court"), thereby commencing the above-captioned cases (these "Cases" or these "Chapter 11 Cases"). The Debtors continue to manage their assets as debtors in possession.

5. On August 12, 2026, the official committee of unsecured creditors was formed.

6. Additional factual background regarding the Debtors' current and historical business operations and the events leading to these Chapter 11 Cases is set forth in the *Declaration of Michael DuFrayne in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 2] (the "First Day Declaration")[2] filed substantially on the Petition Date and incorporated by reference herein.

[2] Capitalized terms used but not defined herein have the meanings given to such terms in the First Day Declaration.

7. As more fully set forth in the First Day Declaration and the DuFrayne Declaration, the Debtors historically offered a variety of cryptocurrency and technology-related services. Prior to the Petition Date, the Lonestar Debtors' business activities included two core segments: (i) mining digital assets for their own account, and (ii) providing cryptocurrency equipment hosting services at their two Texas facilities for large-scale mining clients. As discussed below, on July 10, 2026, the Debtors substantially completed the wind-down of their hosting business.

8. One of the Debtors' mining facilities in Texas, known as the "Tarbush Site," sits on certain real property (the "Land") in which DBR holds rights pursuant to a certain Master Lease dated on or about October 15, 2021, between Delaware Basin Ranches Inc. ("DB Ranches"), as lessor, and DBR, as lessee. Pursuant to the Master Lease, DBR was granted the right to use, control, and convey surface use rights in the Land. DuFrayne Declaration, ¶ 5.

9. LSD and DBR entered into that certain Term Surface Use Agreement dated as of November 24, 2021 (the "TSUA") whereunder DBR granted LSD surface use rights to a 64.00-acre tract of the Land in Pecos County, Texas, for the initial period of 20 years for the construction and operation of the Debtors' mining and energy-related infrastructure that comprises the Tarbush assets, in exchange for the initial payment of $1 million and quarterly payment of certain royalties. DuFrayne Declaration, ¶ 6.

10. On or about August 26, 2024, the parties amended the TSUA (the "First Amendment"). Under the First Amendment, among other things, the parties resolved certain disputes existing at the time regarding water rights and implemented the obligation to pay hosting royalties measured by electricity usage. Additionally, as evidenced by the First Amendment to the TSUA, LSD assigned its rights as "Grantee" under the TSUA to its Debtor-affiliate, LST. DBR

consented to the assignment but asserts that it did not release LSD from its obligations or liabilities under the TSUA. DuFrayne Declaration, ¶ 7.

11. A true and accurate copy of each of the TSUA and the First Amendment is attached hereto as **Exhibit B** and **Exhibit C**, respectively, and fully incorporated herein by reference.

12. DBR asserts that the TSUA automatically terminated on or about October 31, 2024, due to the Lonestar Debtors' alleged failure to pay hosting royalties. DBR further asserts that, as a result of the purported termination, all property not removed and remaining on the Land at the expiration of 180 days after termination, including the-Debtor owned substation on the Tarbush site, automatically became the property of DBR as of April 29, 2025. DuFrayne Declaration, ¶ 8.

13. The Debtors dispute both the termination of the TSUA and DBR's claim of ownership of the property on the Tarbush site, and contend that all of the foregoing property, including certain power rights, is property of the Debtors' bankruptcy estates. DuFrayne Declaration, ¶ 9.

14. On May 18, 2026, DBR commenced litigation against LSD and LST by filing its Plaintiff's Original Petition (the "Complaint"), styled *DBR Land LLC v. Lonestar Taproot LLC and Lonestar Dream Inc.*, Cause No. P-13332-112-CV, in the 112th District Court of Pecos County, Texas (the "State Court Lawsuit"). A true and accurate copy of the Complaint is attached to the DuFrayne Declaration as **Exhibit A**. The Complaint demands, among other things, declaratory judgment regarding termination of the TSUA and damages for trespass, breach of contract, loss of use, and restoration costs. Upon the commencement of the above-captioned Chapter 11 Cases on July 22, 2026, the State Court Lawsuit was stayed. DuFrayne Declaration, ¶ 10.

15. On July 23, 2026, the Debtors filed the Sale Motion whereunder the Debtors sought approval of the proposed Bidding Procedures (as defined in the Sale Motion) for the marketing and sale of their assets, including the property located on the Land.[3]

16. For several months prior to the Petition Date and commencement of the State Court Lawsuit, the Debtors and DBR engaged in good faith negotiations for the settlement of their disputes that were nonetheless unsuccessful. DBR informally objected to the Sale Motion on the grounds that the Debtors could not sell the property subject to the dispute. DuFrayne Declaration, ¶¶ 12, 14 & n.3.

17. The parties continued these good faith, arm's- length settlement discussions post-petition in connection with the Sale Motion and reached a consensual agreement resolving, among other things, DBR's objection to the Sale Motion and the claims in the State Court Lawsuit. The terms of the proposed settlement are memorialized in the Stipulation and Agreed Order enclosed herewith. DuFrayne Declaration, ¶ 14.

18. The essential terms of the settlement agreement are as follows:

a. DBR shall receive a settlement payment of $1,500,000 (the "Settlement Payment"), payable from the sale proceeds or other funds at the closing of the Tarbush sale; if the Tarbush sale has not closed by November 30, 2026, and the Settlement Payment has not otherwise been made, the Debtors shall have the right to make the Settlement Payment independent of a closing.

b. Subject to receipt of the Settlement Payment, DBR waives any and all claims that it owns the assets at the Tarbush site that the Debtors intend to sell to the purchaser or

[3] *See also* Amended Exhibit A to Tarbush APA [Docket No. 78] and Amended Exhibits to Asset Purchase Agreements [Docket No. 100].

remove from the Land (the "Assets"), and any and all other claims against the Debtors (including the State Court Lawsuit), other than claims arising from the indemnity provided in the Stipulation and Agreed Order; provided that the equipment used to operate the freshwater well on the Land is excluded from the Assets and remains the property of DBR.

c. The ultimate purchaser of the Assets (the "Purchaser") and the Debtors will have nine (9) months from the closing of the Tarbush sale (or, if the sale does not close before November 30, 2026, nine (9) months from the date the Settlement Payment is made to DBR) to remove the Assets and any other remaining property from the Land (other than the water well and associated equipment) and to remediate the site as required under the TSUA, including obligations relating to the cement pads on the Land.

d. The Debtors shall indemnify DBR, and the Sale Order will require the Purchaser to indemnify DBR, for any damages to DBR's property, including the Land, or to personnel working on behalf of the Debtors or the Purchaser, arising during the removal and remediation process.

e. Except for the remediation requirement and the easement provided by the TSUA to effectuate removal and remediation, the Debtors and DBR agree that the TSUA is terminated and no longer in effect, effective October 31, 2024, with the easement language surviving for the duration of the nine-(9) month removal and remediation period.

f. Upon receipt of the Settlement Payment, the Debtors and DBR mutually release any and all claims they may have against each other, except for claims (including indemnity claims) arising out of the Stipulation and Agreed Order and the Sale Order.

g. The Stipulation and Agreed Order (and the parties′ compromise) shall be null and void, with all parties′ rights fully reserved, in the event that the Tarbush sale fails to close and the Debtors fail to make the Settlement Payment by November 30, 2026, or in the event that the Purchaser does not agree to the terms applicable to it. The fourteen-(14) day stay under Bankruptcy Rule 6004(h) is waived, and the Court retains exclusive jurisdiction to hear and determine all matters arising from or relating to the interpretation and enforcement of the Stipulation and Agreed Order.

## RELIEF REQUESTED

19. By this Motion, the Debtors seek entry of the Stipulation and Agreed Order attached hereto as **Exhibit A** approving the terms of the settlement with DBR pursuant to Bankruptcy Rule 9019.

## BASIS FOR RELIEF REQUESTED

### A. The Court Should Approve the Settlement Pursuant to Bankruptcy Rule 9019

20. Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee . . . as provided in Rule 2002 and to any other entity as the court may direct.

21. The United States Court of Appeals for the Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate 'compromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); *see also*, *In re Culmtech, Ltd.*, 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990) ("[C]ompromises are favored in bankruptcy and … much of

litigation in bankruptcy estates results in settlements”). Likewise, section 105 of the Bankruptcy Code empowers a court to issue any order that is “necessary or appropriate.” 11 U.S.C. § 105(a).

22. “[T]he authority to approve a compromise settlement is within the sound discretion of the bankruptcy court.” *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005); *see also*, *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). When exercising such discretion, the bankruptcy court must determine whether the compromise is “fair, reasonable, and in the best interest [sic] of the estate.” *Key3Media*, 336 B.R. 87, 92; *see also*, *Fry's Metals, Inc. v. Gibbons (In re RFE Industries, Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002); *In re Louise's, Inc.*, 211 B.R. at 801; *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (Bankr. D. Del. 1998).

23. The bankruptcy court is not required to determine that the proposed settlement is the best possible compromise. *In re Key3Media Group*, 336 B.R. at 92–93 (citing *In re Coram Healthcare Corp.*, 315 B.R. 321, 329 (Bankr. D. Del. 2004)). Rather, the settlement should be approved as long as it does not fall below the lowest point in the range of reasonableness. *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983). In this respect, it is unnecessary for the court to consider the information necessary to resolve the factual dispute, nor is it necessary for the bankruptcy court to “conclusively determine claims subject to a compromise.” *Key3Media Group*, 336 B.R. at 92 (quoting *In re Martin*, 212 B.R. 316, 319 (B.A.P. 8th Cir. 1997)).

24. Courts consider the following four “*Martin*” factors when determining whether a settlement is in the best interests of the estate: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attendant thereto; and (iv) the paramount interest of the creditors and a proper deference to their reasonable opinions. *Martin*, 91 F.3d at 393; *Aetna Casualty & Surety v. Jasmine, Ltd. (In re Jasmine, Ltd.)*, 258 B.R.

119, 123 (Bankr. D.N.J. 1999); *Key3Media Group*, 336 B.R. at 93; *In re Marvel*, 222 B.R. at 249. "[C]ourts should not have a 'mini-trial' on the merits, but rather should canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." In re W.R. Grace & Co., 475 B.R. 34, 77–78 (Bankr. D. Del. 2012).

25. In this case, the factors used by courts each favor approval of the settlement agreement. Both DBR and the Debtors have claims, counterclaims, and defenses arising out of disputes in connection with the TSUA. In this case, the risk of adverse adjudication of the dispute is extreme for both parties. Both parties maintain the merits of their respective position but have undertaken an assessment of the probability of success and determined that the agreed resolution is in the best interests of both parties. For the Debtors, an adverse result in litigating the dispute would destroy their proposed sale and eviscerate much of the value available for recovery by the Debtors' estates.

26. Secondly, while these disputes are essentially conventional matters of contract interpretation, the underlying issues turn on complex issues of Texas land rights law. Although each side maintains confidence in the strength of its legal and factual positions, the settlement agreement provides a pragmatic and value-maximizing resolution by eliminating the substantial litigation risk, cost, and delay inherent in litigation. Specifically, the proposed compromise avoids the legal cost of motion practice and a complex and fact-intensive trial involving disputed issues of competing interpretations of the TSUA.

27. While outcomes of litigation are fundamentally uncertain, and any adverse ruling on one or more of the issues will materially increase administrative expenses and divert estate resources otherwise available for distributions to creditors, prolonged litigation is devastating in this case. As set forth in the *Declaration of Michael DuFrayne in Support of the Debtors' Motion*

*for Approval of Bid Procedures and In Response to the Objection of Lin Liang* [Docket No. 105-1], the Debtors' proposed sale is highly time sensitive due to the impending expiration of an Option Agreement to purchase land adjacent to the Tarbush Site that was assigned to the Debtors and expires on September 30, 2026. *See* id. ¶¶ 17–20. This Option Agreement represents much of the recoverable value for the Debtors' estates in the proposed sale. Litigation of the dispute with DBR would be costly and time-consuming, but it would make consummating a sale on this timeline impossible. Further, the adjudication of the disputed ownership of the personal property remaining on the Tarbush Site is a necessary precondition to the sale because prospective buyers need certainty regarding the assets on which they are bidding. The proposed settlement resolves all of this and results in the Debtors being able to sell all of the property on the Tarbush Site (with the limited exceptions described herein). Based on the foregoing, the factors regarding probability of success, complexity of issues, and expense and inconvenience of litigation indisputably favor approval of the settlement agreement.

28. The second factor regarding collectability of any favorable judgment weighs in favor of the requested relief. Given that the Parties have arrived at a fair and reasonable, arm's-length compromise, the costs of collection are unreasonably burdensome for both sides. Any adverse judgment for the Debtors would be difficult to collect, given the Debtors' limited resources and constraints of these Chapter 11 Cases. Conversely, if the Debtors were successful, they would still incur significant attorneys' fees and costs that would reduce the assets available to creditors. Ultimately, both sides face practical barriers to realizing any meaningful recovery through continued litigation. This mutual collectability risk further supports approval of the settlement agreement as the most fair and efficient alternative under the circumstances.

29. Finally, the paramount interests of creditors factor strongly support approval of the settlement agreement. The settlement agreement was the product of good faith, arm's-length negotiations between the Parties, resulting in a fair and equitable compromise of DBR's claims to the property on the Tarbush Site, which enables the proposed sale to move forward. As the most critical element of creditor recovery in these Chapter 11 Cases, it is of paramount importance for the Debtors to pursue the proposed sale. This is best accomplished by approval of the instant settlement with DBR.

30. In determining whether a compromise is in the best interests of an estate, the Bankruptcy Court must "'assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal.'" *In re Key3Media Group*, 336 B.R. at 93 (quoting *In re Martin*, 91 F.3d at 393 (citing *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968))); *see also In re Nationwide Sports Distributors, Inc.*, 227 B.R. 455, 460 (Bankr. E.D. Pa. 1998) ("[I]n deciding whether to approve a particular compromise, courts utilize various criteria designed to achieve the objective of having the Defendant or debtor in possession act in [the] best interests of the estate."). To properly balance these values, the Court should consider all factors "relevant to a full and fair assessment of the wisdom of the proposed compromise." *In re Marvel*, 222 B.R. at 249 (quoting *TMT Trailer Ferry, Inc.*, 390 U.S. at 424); *see also Key3Media Group*, 336 B.R. at 92 ("[t]he bankruptcy court must be apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate.") (quoting *In re Martin*, 91 F.3d at 393).

31. As set forth in the DuFrayne Declaration, the Tarbush assets that the Debtors seek to sell include a-Debtor owned substation that is central to the Debtors' proposed sale. The substation and the additional equipment and assets of the Debtors at the Tarbush site have a value

well in excess of the $1,500,000 Settlement Payment. Ultimately, however, the $1,500,000 Settlement Payment will be borne in party by the Debtors, and in part by the ultimate purchaser of the Tarbush assets. Therefore, the economic terms are fair and reasonable. On the contrary, if the Debtors are unable to sell the Tarbush assets, this could chill interest from potentially interested parties and risk the agreements with the proposed stalking horse, resulting in harm to the Debtors' estates far greater than the amount of the Settlement Payment. *See* DuFrayne Declaration, ¶ 16.

32. Further, if DBR's objection is not resolved, it would delay, and could altogether prevent, the sale of the Tarbush assets, including the valuable associated power rights of the Debtors. A contested dispute over ownership of the property remaining on the Land would inject material uncertainty into the sale, cloud title to the assets the Debtors seek to convey, and jeopardize the Debtors' ability to consummate a sale within the time-sensitive window described above. DuFrayne Declaration, ¶ 17.

33. In the Debtors' business judgment, the Stipulation and Agreed Order is fair, reasonable, and in the best interests of the Debtors' estates, their creditors, and other stakeholders. DuFrayne Declaration, ¶ 18. It resolves DBR's objection, the State Court Lawsuit, and the parties' disputed claims to the property on the Tarbush site for a fixed sum; it removes the cloud that DBR's asserted ownership and objection would otherwise cast over the Tarbush assets; and it permits the sale of the Debtors' Assets, including the power rights, to proceed on the timeline necessary to preserve value for the estates. The Settlement Payment is modest relative to the value that would be lost if the sale of the power rights was delayed or defeated.

**RESERVATION OF RIGHTS**

34. Nothing contained in this Motion or any order granting the relief requested in this Motion, and no action taken pursuant to the relief requested or granted (including any payment

made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (c) a promise or requirement to pay any particular claim; (d) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (e) an admission that a contract is an executory contract under section 365 of the Bankruptcy Code or that such contract was or was not terminated or expired prior to the Petition Date; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates, and the Debtors expressly reserve their right to contest the extent, validity, or perfection or seek avoidance of all such liens; (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest to dispute any claim on any grounds or to assert any right against any person or entity under the Bankruptcy Code or any other applicable law; or (h) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

35. The Debtors request a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). As explained above and in the *Declaration of Michael DuFrayne in Support of the Debtors' Motion for Approval of Bid Procedures and In Response to the Objection of Lin Liang* [Docket No. 105-1], the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors due to the time-sensitive nature of the proposed sale. Accordingly,

ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

**WAIVER OF MEMORANDUM OF LAW**

36. The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

**NO PRIOR REQUEST**

37. No prior motion for the relief requested herein has been made to this or any other court.

**NOTICE**

38. Pursuant to Local Rule 9013-5(f), notice of this Motion will be provided to the following parties: (i) the Office of the United States Trustee for the District of New Jersey; (ii) counsel to the official committee of unsecured creditors; (iii) counsel to DBR; (iv) the Internal Revenue Service; (v) the United States Attorney’s Office for the District of New Jersey; (vi) counsel for the Stalking Horse Purchasers; and (vii) any other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-5. The Debtors submit that such notice is sufficient, and no other or further notice need be provided.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court approve the terms of the proposed settlement and enter the Stipulation and Agreed Order attached hereto as **Exhibit A**.

Dated: August 14, 2026

**ARCHER & GREINER, P.C.**

*/s/ Stephen M. Packman*
Stephen M. Packman, Esq.
Douglas G. Leney, Esq.
Natasha M. Songonuga, Esq.
Alexander J. Andrews, Esq. (Admitted *PHV*)
1025 Laurel Oak Road
Voorhees, NJ 08043
Telephone: (856) 795-2121
Facsimile: (856) 795-0574
Email: spackman@archerlaw.com
dleney@archerlaw.com
nsongonuga@archerlaw.com
aandrews@archerlaw.com

*Counsel to the Debtors*