UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**
**ARCHER & GREINER, P.C.**
Stephen M. Packman, Esq.
Douglas G. Leney, Esq.
Natasha M. Songonuga, Esq.
Alexander J. Andrews, Esq. (admitted *PHV*)
1025 Laurel Oak Road
Voorhees, NJ 08043
Telephone: (856) 795-2121
Facsimile: (856) 795-0574
Email: spackman@archerlaw.com
dleney@archerlaw.com
nsongonuga@archerlaw.com
aandrews@archerlaw.com

*Attorneys for Debtors*

| | |
|---|---|
| In re:<br><br>POOLIN TECHNOLOGY PTE. LTD., *et al.*[1]<br><br>Debtors. | Case No. 26-18325 (EJO)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>Judge: Eamonn J. O'Hagan |

**SUPPLEMENTAL DECLARATION OF MICHAEL DUFRAYNE REGARDING AUCTION RESULT AND IN SUPPORT OF APPROVAL OF SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS**

MICHAEL DUFRAYNE, being of full age, hereby declares pursuant to 28 U.S.C. § 1746 under penalty of perjury as follows:

1. I am the Chief Restructuring Officer ("CRO") of Poolin Technology Pte. Ltd. ("Poolin") and its affiliated debtors and debtors-in-possession: Lonestar Dream Inc. ("LSD"); and

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Poolin Technology Pte. Ltd., a Singapore Private Limited Company; Lonestar Dream Inc. (5105); and Lonestar Taproot LLC (4118). The location of the Debtors' service address for purposes of these Chapter 11 Cases is: c/o Michael DuFrayne, CRO, 2564 US Highway 1, PMB #16884166, Lawrence, NJ 08648.

Lonestar Taproot, LLC ("LST" and collectively, the "Debtors").

2. I am over the age of 18 years and authorized to submit this supplemental declaration (the "Supplemental Declaration") in further support of the Debtors' motion seeking approval of the proposed sale of the Assets (as defined in the Asset Purchase Agreements) associated with the Debtors' Pyote and Tarbush facilities and the relief requested in connection therewith [Docket No. 30] (the "Motion").[2]

3. Except as otherwise indicated, the facts set forth in this Supplemental Declaration are based upon my personal knowledge, my review of relevant documents and information provided to me by the Debtors' professionals and advisors, and my experience as CRO of the Debtors. If called to testify, I could and would testify competently to the facts set forth herein.

4. I previously submitted declarations in support of the Motion. [Docket Nos. 2, 105]. I submit this Supplemental Declaration in further support, including with respect to the auction conducted on September 10, 2026 (the "Auction"), the events occurring after the Auction, and the Debtors' subsequent determination, in consultation with the Official Committee of Unsecured Creditors (the "Committee"), to proceed with a sale transaction for the Assets with Hut 8 Corp. ("Hut 8").

## The Auction

5. On August 17, 2026, the Court entered the *Order (I) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (II) Authorizing the Debtors to Designate the Stalking Horse Bidder, (III) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (IV) Approving Procedures for the Assumption and Assignment of or Rejection of Designated Executory Contracts and Unexpired Leases, (V) Scheduling a Sale Hearing and*

---

[2] Capitalized terms used but not defined herein have the meanings given to such terms in the Motion.

*Approving the Form and Manner of Notice Thereof, and (VI) Granting Related Relief* [Docket No. 138] (the "Bid Procedures Order"), which, among other things, approved the Bidding Procedures.

6. On August 19, 2026, in accordance with the Bid Procedures Order, the Debtors filed and served a *Notice of Sale by Auction and Sale Hearing* [Docket No. 148] whereby the Debtors provided notice of the Auction taking place on September 10, 2026.

7. Prior to the Auction and following the marketing and competitive bidding process established under the Bidding Procedures, the Debtors received multiple Qualified Bids for the Assets, including bids for the Pyote Assets and the Tarbush Assets individually and bids for all or substantially all of the Assets as a whole.

8. On September 10, 2026, at 10:00 a.m. (EST), the Debtors held the Auction both virtually and in person at the offices of Archer & Greiner, P.C., 1025 Laurel Oak Road, Voorhees, NJ 08043. I was present and conducted the Auction. Counsel for the Debtors and Committee attended the Auction.[3] Counsel for DBR Land attended the Auction remotely by permission. All of the bidders were represented by counsel either in person or remotely.

9. The Auction was transcribed by Shannon Yost and Alan Peacock, Certified Court Reporters. The transcript is lengthy, as the Auction did not end until around 10:40 p.m. A copy of the transcript is attached hereto as Exhibit "A."

10. Before starting the Auction, I made certain announcements regarding Auction rules and conditions ("Auction Rules"). A copy of the Auction Rules is annexed hereto as Exhibit "B."

11. The Auction was conducted to provide all Qualified Bidders with a fair opportunity to submit competing bids for the Assets to permit the Debtors to maximize the value of the Assets for the benefit of the Debtors' estates and creditors.

[3] Counsel to the Committee participated remotely.

12. The starting "Baseline Bid" in the aggregate for the Assets at Auction was the offering of Hut 8 at $55,482,500; and the Baseline bids for the Tarbush Assets was the offering of Fluidstack, under its APA at $46,000,000 and for the Pyote Assets, Giga Energy, Inc., under its APA, at $16,000,000.

13. For over 12 straight hours, with little more than a 15-minute lunch break, the Debtors, I, and Debtors' counsel not only conducted a fairly complicated Auction but also made themselves fully available during the conduct of the Auction to all of the bidders and their counsel.

14. At the outset of the Auction, during the announcements, and then at various times during the Auction, either directly or through counsel, all bidders were made specifically aware that the Debtors and Committee would consider each bid based upon the total value of such bid to the Debtors' estates, including all economic and non-economic terms offered. Bidders were told by Debtors' counsel at the outset of the Auction and at its conclusion that such considerations would include evaluation of offered APA contractual terms. The bids during Auction included waivers and variations of APA terms. There were extended conversations during the Auction between the Debtors, Committee, bidders and counsel regarding the APA terms and other alternative consideration forms offered by certain bidders. The Auction was not a static process. At the conclusion of the Auction, counsel for the Debtors had a conversation after the record of the Auction had closed.

15. Those considerations included not only the stated purchase price, but also the form and timing of the consideration, modifications to the terms of the APAs more favorable to the Debtors, the conditions to closing, execution risk, timing, certainty of consummation of a final sale, and the overall value and benefit of each transaction to the Debtors' estates and creditors.

16. As set forth in the Transcript attached, at the outset of the Auction certain of the "individual" asset bidders objected to my commencing the Auction with lot bids, followed by bids for the Assets in the aggregate. After deliberation with counsel, the Debtors and Committee determined to start bidding with qualified bidders in the aggregate followed by lot bidding by those qualified bidders. Certain aggregate bidders then voiced their objections to the sequencing of bids.

17. The attached transcript sets forth the bidding history on the lot bids and in the aggregate, colloquy during the Auction with bidders and counsel and related matters.

18. At the conclusion of the Auction, I announced the following "winning bids" by dollar amount for the Pyote and Tarbush Assets: Thor as an aggregate bidder at an offering price of $180,000,000. The Backup aggregate bidder on the Assets was announced as Hut 8 at an offering price of $179,000,000. Giga Energy was the high lot bidder on the Pyote Assets at $36,750,000 and Thor was the high lot bidder on the Tarbush Assets at $103,000,000.

19. At around 10:45 p.m., given the late hour, the Court Reporter (who had transcribed the proceedings since mid-morning) was relieved and the Debtors' counsel then advised counsel for Thor and Hut 8 that there was insufficient time at the late hour to begin the process of reviewing and negotiating APA terms with the bidders. Hut 8's APAs had been received the prior evening. Debtors' counsel advised that APA discussions would begin the following day. Counsel for Thor noted that the following evening was the commencement of Rosh Hashanah.

**Post-Auction Efforts to Document Thor's Winning Bid**

20. On September 11, 2026, the day after the Auction, at around 5:00 p.m., Thor's counsel advised that Thor would not entertain any substantive revisions to Thor's APAs, originally signed on July 22, 2026.

21. The other bidders at Auction agreed to negotiate their APA terms as consideration supplemental to their dollar amount bids.

22. Consistent with the provisions of the Bid Procedures and terms of the Auction announcements, Thor was requested to "top up" their bid deposit to 5% of the total bid amount of $180,000,000. The prior bid deposit on hand from Thor was only 1.5% of their total bid. Despite repeated requests to Thor for a top up over the ensuing days, Thor refused to do so; Hut 8 did not. Hut 8's APAs provide for deposits of 7.5% of the total purchase price for the Assets.

23. The Debtors also requested that Thor waive certain language in its APAs granting Thor "sole and absolute discretion" with respect to energy approval and title provisions which, if not removed, would permit Thor to unilaterally decline to close the transactions. All of the other bidders at Auction agreed to remove these provisions from their APAs.

24. The Debtors also requested that Thor agree to continue the closing date in the original APAs from November 11, 2026 to December 15, 2026, with extension provisions for up to 90 days. This was requested due to an expected energy "Approval" document (directly related to an APA closing provision) to be issued by or for ERCOT on or about December 10, 2026. Thor declined to agree while all of the other bidders agreed to this revision.

25. APA language concessions are important considerations for the Debtors in this case. The Debtors and Committee could not evaluate bids solely by reference to a bidder's stated monetary purchase price.

26. The bids in this case are tied to certain dates and future events. In the Debtors' business judgment, the certainty and enforceability of a purchaser's obligation to close are material components of the economic bid. Put succinctly, the amount of the bid is not the only driver in this case of the value of the bid.

27. As a result, the Debtors were unable to reach agreement with Thor on definitive documentation that, in the Debtors' reasonable business judgment (in consultation with the Committee), provided sufficient certainty that Thor's $180 million bid would be consummated and that the Debtors' estates would not realize the stated consideration.

**The Debtors' Reengagement with Hut 8**

28. In light of these developments with Thor, and after consultation with the Committee, Thor was formally requested (twice), in writing, to confirm whether or not it was willing to negotiate further. The answer each time was no.

29. The Debtors and Hut 8 then engaged in arm's-length negotiations concerning both the economic and contractual terms upon which Hut 8 would be willing to proceed with the sale transactions. As a result of these negotiations Hut 8 agreed to proceed with a transaction providing the Debtors with alternative consideration structures consisting of either (a) $140,000,000 in cash payable at closing, or (b) an alternative transaction at a higher overall price with cash at closing and deferred consideration, in each case subject to agreed terms and conditions set forth in revised APAs.

30. The revised Hut 8 transaction was not the result of any preference for Hut 8 or an effort by the Debtors to confer a benefit upon Hut 8. Rather, the revised terms were the product of arm's-length negotiations conducted after Thor declined to proceed on material terms the Debtors considered necessary to provide adequate certainty of performance and closing on the sale transaction.

31. Following lengthy, daily negotiations with Hut 8 over the last nine days, and many consultations with the Committee, the Debtors, with Committee approval, have selected Hut 8's bid' for a total consideration of $140,000,000 ("Hut 8's Bid") as the prevailing aggregate bid for

the Assets. The final “Hut 8 APAs” were completed today and are attached as Exhibit “C.” Hut 8 is a large public company and signed APAs will be filed with the Court prior to the sale approval hearing.

32. The Debtors and the Committee did not evaluate the transaction solely by comparing Hut 8’s Bid to the stated amount of Thor’s bid. Instead, consistent with the Bidding Procedures and the Debtors’ obligation to maximize value for their estates, the Debtors, in consultation with the Committee, considered the totality of the circumstances and the overall value reasonably expected to be actually realized by the estates as well as the risk of further delay, the costs associated with continued administration of these Chapter 11 Cases, and the risk to the estates if a proposed transaction ultimately failed to close. The Debtors, in consultation with the Committee, also evaluated Hut 8’s Bid based upon the transaction actually available to the estates at the time in light of Thor’s refusal to proceed.

33. Based upon those considerations, and after consultation with the Committee and the Debtors’ professionals, the Debtors determined in the exercise of their business judgment that Hut 8’s Bid represents the highest and best available and executable transaction for the Assets. The Debtors determined that the greater certainty associated with Hut 8’s Bid outweighed that of Thor’s because Thor was quite clearly unwilling to agree to terms of sale that the Debtors and Committee considered necessary to provide a reasonable certainty of closing on the sale transaction.

34. The APAs of the prevailing backup bidders, Fluidstack on the Tarbush Assets and DigipowerX on the Pyote Assets are attached as Exhibit “D.”

**<u>Good Faith and Arm's-Length Sale Process</u>**

35. The Debtors' decision to proceed with Hut 8 was made in good faith, after consultation with the Debtors' professionals and the Committee and its professionals, and in the exercise of the Debtors' reasonable business judgment.

36. The Auction itself was conducted in good faith, at arm's length, and in accordance with the Bidding Procedures. All Qualified Bidders were afforded an opportunity to participate in the Auction and submit competing bids in accordance with those procedures.

37. The Debtors' post-Auction negotiations with Thor likewise were undertaken in good faith and for the purpose of documenting a transaction that provided the Debtors with sufficient certainty that Thor would consummate its bid. The revisions requested by the Debtors from Thor were not intended to favor one bidder over another or to undermine the Auction results. Rather, they were intended to ensure that the bid ultimately selected by the Debtors could be documented and consummated on terms providing sufficient certainty and value to the estates.

38. When those negotiations did not result in definitive agreements acceptable to the Debtors, the Debtors' subsequent negotiations with Hut 8 were likewise conducted in good faith and at arm's length. Neither the Debtors nor, to my knowledge, Hut 8 engaged in any collusion, fraud, or improper conduct in connection with the Auction, the post-Auction negotiations, or the proposed Hut 8 transactions.

39. The Debtors have continued to consult with the Committee throughout this process. The Committee supports the Debtors' determination to proceed with Hut 8's bid as the prevailing bid.

40. Based upon the competitive sale process, including the results of the Auction, the subsequent negotiations with Thor and Hut 8, the terms of the respective transactions, and my

discussions with the Debtors' and Committee's professionals, I believe that Hut 8's bid is fair and reasonable, was negotiated in good faith and at arm's length, and provides the Debtors with the best available combination of value and certainty of consummation.

41. I further believe that approval of the sale to Hut 8 is in the best interests of the Debtors, their estates, their creditors, and other stakeholders and represents the best available means of maximizing the value of the Assets.

42. Accordingly, I respectfully request that the Court approve the sale of the Assets to Hut 8 pursuant to the Revised Hut 8 APAs and grant the related relief requested by the Debtors.

I certify that the foregoing statements made by me are true to the best of my knowledge, information, and belief.

Dated: September 23, 2026

By: *<u>/s/ Michael DuFrayne</u>*
MICHAEL DUFRAYNE
CRO